**RIVERDALE MILLS CORP. and James M. Knott, Plaintiffs,**

v.

**AMERICAN MODERN HOME INSURANCE CO., Defendant.**

**No. CIVA98CV40104–NMG.**

United States District Court, D. Massachusetts.

Nov. 29, 2000.

---

Warren G. Miller, Boston, MA, for Riverdale Mills Corp, James M. Knott, Sr., Plaintiffs.

Gregory P. Varga, Robinson & Cole, John E. Tener, Robinson & Cole, Boston, MA, Gerald J. Nielsen, Metairie, Stimpson B. Hubbard, Finnegan, Underwood, Ryan & Tierney, Philip T. Tierney, Finnegan, Underwood, Ryan & Tierney, Boston, MA, for Fireman's Fund Insurance Company, American Modern Home Insurance Company, Defendants.

### MEMORANDUM & ORDER

GORTON, District Judge.

In this action to recover on a flood insurance claim, the defendant, American Modern Home Insurance Company ("American"), has filed a Motion for Summary Judgment (Docket No. 17) based on six separate grounds for relief. The Plaintiffs oppose the motion.

## I. *Background*

Plaintiff, James M. Knott, is the owner of the corporate plaintiff, Riverdale Mills Corporation ("Riverdale"), a manufacturing plant/mill that produces wire mesh and electricity. Knott and Riverdale will be collectively referred to as "the Plaintiffs." In front of the building occupied by Riverdale is a black-top road and a thirteen and one-half acre pond, about six feet deep. The pond was created by the Plaintiffs by the redamming of the Blackstone River which curves around the mill.

In April of 1996, the Blackstone River valley area experienced heavy rains which caused the level of the mill pond to rise and, allegedly, the mill to flood. The first flood occurred on April 5, 1996 ("the April 5 flood") and a second flood eleven days later, on April 16, 1996 ("the April 16 flood"). Although the April 16 flood is not part of the Plaintiffs' claim in this action, it is relevant in that it is referenced in correspondence between the parties. That reference, in turn, has caused confusion about the exact date of American's denial of Plaintiffs' claim arising out of the April 5 flood.

As a result of the April 5 flood, Plaintiffs sought to recover under their Standard Flood Insurance Policy ("the SFIP") with American. On April 17, 1996, Plaintiffs filed a notice of loss. The loss was inspected on April 23, 1996. On May 15, 1996, Plaintiffs received a letter denying their claim which they contend referred "only to the loss of April 16, 1996 and not to the loss of April 5, 1996". The claim for the loss resulting from the April 16 flood was, however, eventually paid in full by Fireman's Fund Insurance Company, a co-defendant but not a party to the current motion.

American asserts that the "Property Loss Notice" sent on April 17, 1996 is the only notice of loss that it received from the Plaintiffs concerning either the April 5 or the April 16 floods. American contends that it never received a separate notice of loss with respect to the April 5 flood.

On May 15, 1996, National Flood Services ("NFS"), a vendor which administers claims for American, sent a letter to the Plaintiffs referencing April 16, 1996 as the date of loss. NFS denied the claim because there was "no general and temporary condition of flooding in the area" and therefore the occurrence did not fall within the policy's definition of a flood. The denial-of-claim letter also noted that because the release of water was within the Plaintiff's control and the water was not released until it breached the dam, the loss was not covered under Article III of the SFIP. The letter concluded that: "Of course, if you have any information or documentation to the contrary, we would be glad to review it."

On June 27, 1997, NFS stated in a letter to the Plaintiffs that, although the adjuster had on several occasions requested estimates of damage, the Plaintiffs had failed to provide them and that no signed proof of loss had been received within sixty days after the date of the flood. NFS indicated its willingness to keep the Plaintiffs' claim "open for another 30 days", but noted that if the requested information and a signed proof of loss was not received within that time period, NFS would close the claim without further consideration.

On July 23, 1997, in response to the June 27, 1997 letter, and fifteen months after the April 5 flood, Plaintiffs filed a proof of loss with American in the amount of $255,814. NFS addressed another letter to the Plaintiffs dated October 7, 1997. It also referenced April 16, 1996 as the date of loss but clearly related to the April 5 flood because it referred to "underground structures" which were not involved in the April 16 flood. The letter advised the Plaintiffs that the damage claimed was not covered under the SFIP because (1) it was not directly and proximately caused by the cited flood event, and (2) damage to underground structures is not covered under the SFIP. The letter concluded again that: "Of course, if you have documentation or evidence to the contrary we would be glad to review it."

On May 29, 1998, Riverdale submitted to NFS a set of the schedules, supported by copies of invoices, detailing the loss resulting from the April 5 flood. The response of NFS, although again referencing April 16, 1996 as the date of loss, clearly related to the claim arising out of the April 5 flood. The Plaintiffs argue that the response, dated June 11, 1998, is the first notice they received denying their claim for damages resulting from the April 5 flood. On August 10, 1998, Plaintiffs filed suit naming American as a defendant and the pending motion for summary judgment followed in due course.

## II. Discussion

### A. Summary Judgment Standard

In accord with Fed.R.Civ.P. 56(c), summary judgment must be granted if "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." *See* Fed. R.Civ.P. 56(c); *Magee v. United States*, 121 F.3d 1, 3 (1st Cir.1997).

A genuine issue is one which a reasonable fact finder could resolve in favor of the nonmoving party. *Id.* Not every genuine factual conflict, however, necessitates a trial. "It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." *Parrilla–Burgos v. Hernandez–Rivera*, 108 F.3d 445, 448 (1st Cir.1997) (internal quotations omitted).

Once the moving party has demonstrated that no genuine issue of material fact exists, the burden of production shifts to the nonmovant to contradict the demon-

stration by coming "forward with specific provable facts which establish that there is a triable issue." *Matos v. Davila*, 135 F.3d 182, 185 (1st Cir.1998). The role of a summary judgment motion in general "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Coyne v. Taber Partners I*, 53 F.3d 454, 457 (1st Cir.1995).

### B. National Flood Insurance Act

The National Flood Insurance Act ("NFIA"), 42 U.S.C. § 4001, et. seq., authorizes the federal government to establish the National Flood Insurance Program ("NFIP"), a federally-subsidized program which provides flood insurance at below actuarial rates. Congress created the program because it was persuaded that private insurance companies were unable to write economically feasible flood insurance policies. Since 1978, the Federal Emergency Management Agency ("FEMA") has operated both the NFIP and the Federal Insurance Administration ("FIA").

In 1983, FEMA created the "Write–Your–Own" ("WYO") program which allows private insurers to write Standard Flood Insurance Policies ("SFIPs") under their own names. American is authorized to operate as a WYO insurance company and to issue SFIPs. Although American (through its vendor, National Flood Services ("NFS")) administers the insurance policies, the government, through FEMA, pays the claims. The Treasury of the United States pays both the "cost incurred in the adjustment and payment of any claims for flood losses." 42 U.S.C. § 4017(d).

### C. Analysis

**1. Whether the SFIP requirement that Insureds file a proof of loss within sixty days was waived**

The SFIP provides that within sixty days after a flood loss, the insured is to submit to the insurer a proof of loss, a sworn statement including specific information about the claim, including the nature, cause and value of the loss, as well as the claimants interest in the damaged property. 44 C.F.R. Pt. 61, App. A(1); SFIP Art. 9(J)(1–3). Article 9(R) of the SFIP states that no suit may be brought unless the policyholder has complied with all of the requirements of the policy.

American argues that Plaintiffs' lawsuit under the SFIP is time-barred because they failed to file the proof of loss within sixty days of the April 5 flood. The Plaintiffs counter that the NFS letter dated June 27, 1997 requesting that the proof of loss be filed within 30 days constituted an express waiver by NFS, a representative of the FIA. American responds, in turn, that only the FIA may waive the proof of loss requirement and that the June 27, 1997 letter from NFS does not constitute such a waiver.

The Plaintiffs filed a proof of loss on July 23, 1997, fifteen months after the date of loss, well after the sixty-day deadline. The issue is whether the subject NFS letter requesting that the Plaintiffs file a proof of loss within 30 days serves as a waiver of the proof of loss requirement established by the FIA pursuant to 44 C.F.R. § 61.13(d).

■ Provisions of an insurance policy issued pursuant to a federal program must be strictly construed and enforced. *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). With regard to policies written by private insurance companies under the NFIP, courts have held that a strict compliance rule is applicable because the insurers draw funds from the United States Treasury to pay flood loss claims. *Flick v. Liberty Mutual Fire Ins. Co.*, 205 F.3d 386, 387 (9th Cir. 2000), *cert. den'd* —— U.S. ——, 121 S.Ct. 305, 148 L.Ed.2d 245 (2000); *Gowland v. Aetna*, 143 F.3d 951, 955 (5th Cir.1998). In adhering to such a rule, courts

avoid disturbing the delicate balance, which FEMA has sought to strike, be-

tween the need to pay claims and the need to ensure the long term stability of the NFIP.

*Flick,* 205 F.3d at 396. The importance of strict compliance with a SFIP's procedural requirements is further underscored because these requirements "constitute conditions precedent to a waiver by the federal government of its sovereign immunity." *Wagner v. Director, Federal Emergency Management Agency,* 847 F.2d 515, 518 (9th Cir.1988). Because waivers of sovereign immunity are construed narrowly, the conditions of an insurance policy offered pursuant to a congressionally mandated program, such as the NFIP, must be strictly observed. *Wagner,* 847 F.2d at 518.

■ Courts have also noted that insurance companies providing SFIPs are under no obligation to demand that an insured comply with the requirements of the policy, and that the SFIP "candidly warns" the insured not to rely upon the insurer for assistance in complying with the proof of loss requirement. *Humphrey v. NFIP,* 885 F.Supp. 133, 137 (D.Md.1995); *Wagner,* 847 F.2d at 520. The regulations themselves provide the necessary incentive and consequences for noncompliance. *Humphrey,* 885 F.Supp. at 137.

Title 44 of the Code of Federal Regulations, Section 61.13(d), states that a waiver of the proof of loss requirement must be made by the FIA:

no provision of the said documents shall be altered, varied, or waived other than by express written consent of the Administrator through the issuance of an appropriate amendatory endorsement, approved by the Administrator as to form and substance for uniform use.

44 C.F.R. § 61.13(d).

Two cases have been found with facts similar to the case at bar. In *Gowland v. Aetna,* 143 F.3d 951 (5th Cir.1998), the plaintiffs' camp was flooded in April of 1994 and the plaintiffs did not submit a proof of loss within the requisite time peri-

od. They argued that the insurer waived such a requirement by (1) sending them a reminder letter regarding the proof of loss requirement and (2) repeatedly reopening their file after the sixty-day deadline had passed. The Court held that because the reminder letter expressly stated it was not waiving any rights or defenses under the policy, it was "beyond peradventure that [the defendant's] letter may not be interpreted as a written waiver." *Gowland,* 143 F.3d at 954.

The Court also held that in light of the provision that an express written waiver is necessary to dispense with the proof of loss requirement, the contention that the defendant waived the requirement by merely re-opening the file after the sixty-day deadline was without merit. The court stated that

at most, the re-opening of the file after the deadline might be deemed a constructive waiver which, however, could not be effective in light of the policy and federal regulations mandating that any waiver be express and in writing ... [and to require plaintiffs to] turn square corners when dealing with the Treasury does not reflect a callous outlook. It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury.

*Id.* at 954, 955, *citing Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 385, 68 S.Ct. 1, 92 L.Ed. 10 (1947). The Fifth Circuit Court of Appeals affirmed the district court's grant of summary judgment for the insurer. *Id.*

In *Binkley v. Federal Insurance Administration,* 1998 WL 817649 (N.D.Cal. 1998), the plaintiffs' alleged losses occurred in January of 1997. Following those losses, the National Flood Insurance Program sent at least two letters to the plaintiffs alerting them that failure to submit a signed proof of loss by early March would preclude recovery. The plaintiffs did not submit the required proof of loss and in May, 1997 the NFIP informed them

that their claim had been denied for that reason. Throughout 1997, both before and after the May denial, the plaintiffs corresponded with a government-assigned adjuster in an effort to get the adjuster to increase his estimate of the plaintiffs' losses. In a letter dated January 27, 1998, the NFIP affirmed the adjuster's original estimate and offered to pay that amount if the plaintiffs submitted a signed proof of loss. Instead, the plaintiffs filed suit. In response to the defendants' motion for summary judgment based on the plaintiffs' failure to submit a signed proof of loss, the plaintiffs argued that (1) the government was estopped from enforcing the proof of loss requirement because NFIP "continued to deal" with them after the deadline and (2) the January 27, 1998 letter retroactively waived both the proof of loss requirement and the May, 1997 denial of their claim.

The court held that the plaintiffs' estoppel claim failed because they did not even argue, much less offer any evidence, that the government engaged in "affirmative misconduct going beyond mere negligence." *Binkley* at *2. As for the January 27, 1998 letter, the court noted that the policy states that it "cannot be amended nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator." *Id.,* citing 44 C.F.R. § 61 App. (A)(2) at Art. 8, § D. The court went on to point out that strict construction of that requirement was appropriate because the waiver of a policy provision is effectively a further waiver of sovereign immunity. *Id.,* citing *Wagner,* 847 F.2d at 517.

The *Binkley* court also noted that the letter was not an express waiver, was not from the Federal Insurance Administrator and "[i]ndeed ... affirms that a signed proof of loss is a [condition] precedent to payment from the government, and it expressly reserves all rights and defenses under the policy." *Id.* The court found that at most, the letter expressed a willingness to pay the plaintiffs the amount they had rejected earlier in spite of the missed sixty-day deadline, if only they would file a proof of loss. *Id.* The court granted summary judgment in favor of the defendants.

■ In our case, the June 27, 1997 letter from NFS to Plaintiffs states, in relevant part:

[I]t has been a year since the adjuster has requested on several occasions that you provide him with estimates for the damage and he has yet to receive them. Therefore, since a signed Proof of Loss detailing the loss and damage has not been received within the required 60 days of the Proof of Loss pursuant to the [SFIP] ... [i]n an effort to settle your claim, we are will [sic] to keep your claim open for another 30 days, however, if the requested information and signed Proof of Loss are not received within that time period, we will have no other alternative but to close your claim without further consideration.

The letter concludes with a statement that NFS is a vendor administering flood policies on behalf of several W.Y.O. carriers in accordance with federal regulations and guidelines established by the NFIP and the FIA.

The instructions of the United States Supreme Court in *Federal Crop Ins. Corp. v. Merrill* to construe such policies strictly, and the plain language of 44 C.F.R. § 61.13(d), compel a finding by this Court that the June 27, 1997 letter did not waive the proof of loss requirement.

Furthermore, the public policy rationale disclosed by the Ninth Circuit Court of Appeals in *Wagner* is applicable to this case. There the Court refused to recognize that reconsideration of a claim's denial reset the one-year statute of limitations for filing suit. It held, rather, that correspondence between the parties that "merely provided additional explanations for FEMA's position" after it had denied the claim did not reopen the case or extend the statute of limitations. *Wagner,* 847 F.2d at 521. The Court reasoned that any

such extension would contravene a strong public policy to encourage insurance companies to reconsider their original denials when confronted with potentially new facts. It concluded that:

> If insurance companies were saddled with the situation that whenever [they] reconsidered an earlier decision it would inaugurate a new limitations period, companies would be reluctant to offer policy holders the luxury of a second evaluation.

*Id.,* (internal citations omitted). Certainly, an entity providing insurance under the NFIA would be deterred from gathering information and fully exploring the validity of a claim if such conduct could, in any way, be construed as a waiver of the insurer's rights under the policy.

Case law endorsing the strict construction of the policy requirements of the SFIP is compelling and leads this Court to conclude that the June 27, 1997 letter does not constitute a waiver of the sixty-day proof of loss filing requirement. Therefore, American's motion for summary judgment with respect to this issue will be allowed.

Although unnecessary to its decision, this Court will, in the interest of providing a complete record, briefly address the remaining grounds on which American relies in support of its motion for summary judgment.

### 2. Whether the SFIP requirement that suit be filed within one year of the date of claim denial was met

With respect to American's argument that the Plaintiffs failed to file suit in a timely manner, a genuine issue of material fact exists as to when NFS denied the Plaintiffs' claim arising out of the April 5 flood. A reasonable jury could find that prior to June 11, 1998 NFS did not deny the Plaintiffs' claim because (1) its letter dated May 15, 1996 referenced the date of loss as April 16, 1996, (2) both the letters dated May 15, 1996 and October 7, 1997

ended with an invitation to submit additional documentation or evidence and (3) the June 11, 1998 letter was the first to refer the Plaintiffs to the provision of the SFIP dealing with the Plaintiffs' right to bring suit after the denial of a claim. Therefore, the defendant would not be entitled to summary judgment on the ground that the Plaintiffs did not file suit in a timely manner.

### 3. Whether losses stemming from "general conditions of flooding" can be shown

The SFIP covers only risks relating to "general conditions of flooding". Article 3(C)(2) of the SFIP excludes from coverage

> a loss from a flood which is confined to the premises on which [the] insured property is located unless the flood is displaced over two acres of the premises.

In this case, a substantial issue of material fact exists as to whether or not circumstances surrounding the April 5 flood constituted "general conditions of flooding". Whether more than two acres of the Plaintiffs' property were flooded and whether water entered the floor of the manufacturing plant are matters seriously in dispute. For that reason, American would not be entitled to summary judgment on that ground.

### 4. Whether damages resulted from conditions within the control of the Plaintiffs

The SFIP does not cover damages that result from some condition on the property within the control of the insured. Article 3(B)(5). American argues that the alleged damages resulting from the April 5 flood were within the control of the Plaintiff, specifically, the height of the millpond. Again, a genuine issue of material fact exists as to whether Knott had "control" of the condition causing the claimed damages. It is not clear whether breaching the dam

during the April 5 flood would have prevented the damages, nor is it clear whether Knott's ability to open the dam constituted "control" over a "condition" which precipitated the damages. For those reasons, American would not be entitled to summary judgment on that ground.

### 5. Whether sluiceways constitute "underground structures" exempt from coverage under the SFIP

Article 6(C)(4) of the SFIP provides that the policy does not cover structures other than buildings, including "underground structures and equipment, including wells, septic tanks and septic systems." The Plaintiffs seek to recover damages to underground sluiceways that form part of the foundation of and pass beneath the mill building. American contends that the SFIP does not cover damage to underground sluiceways and that it is undisputed that the Plaintiffs' sluiceways at issue are underground. Once again, a genuine issue of material fact exists as to whether the sluiceways form a part of the building's foundation, or whether they are merely "underground structures" exempted from coverage under the SFIP. Therefore, American would not be entitled to summary judgment on that issue.

### 6. Whether the SFIP prohibits coverage for lost profits

Finally, American argues that the Plaintiffs are apparently claiming damages for lost profits and that any such damage arising from loss of use, interruption of business or loss of profits is expressly and clearly excluded from coverage under the terms of the SFIP.

Article 3(A)(1)-(4) and (7) provide that We only provide coverage for direct physical loss by or from flood which means we do not cover:

A. Compensation, reimbursement or allowance for:

1. Loss of use of the insured property or premises.

2. Loss of access to the insured property or premises.

3. Loss of profits.

4. Loss resulting from interruption of business, profession, or manufacture.

\*  \*  \*  \*  \*  \*

7. Any other economic loss.

The Plaintiffs conspicuously do not address American's argument in their Opposition.

In attachments to the Plaintiffs' sworn proof of loss, submitted on July 23, 1997, they claim $16,647 in "total revenue lost" during the two months that the "hydro-electric unit was shutdown" in order to make repairs. That appears to be a demand for lost profits which are not recoverable under the SFIP. Therefore, American is entitled to summary judgment on that portion of the Plaintiff's claim.

### ORDER

For the foregoing reasons, American's motion for summary judgment (Docket No. 17) is **ALLOWED** and this action is **DISMISSED**.

**So ordered.**