# United States Court of Appeals
## For the First Circuit

No. 05-2014

ONEBEACON AMERICA INSURANCE COMPANY;
and PENNSYLVANIA GENERAL INSURANCE COMPANY;

Plaintiffs, Appellants,

v.

TRAVELERS INDEMNITY COMPANY OF ILLINOIS,

Defendant, Appellee;

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT MASSACHUSETTS

[Hon. Edward F. Harrington, Senior U.S. District Judge]

Before

Lipez, Circuit Judge,
Cyr, Senior Judge,
and Howard, Circuit Judge.

Peter G. Hermes, with whom Peter C. Netburn, Michael S. Batson, and Hermes, Netburn, O'Connor & Spearing, P.C. were on brief, for the appellant.
William A. Schneider, with whom Michael F. Aylward, Richard W. Jensen, and Morrison Mahoney LLP were on brief, for the appellee.

October 6, 2006

**LIPEZ, <u>Circuit Judge</u>**. In this diversity case, appellee Travelers Indemnity Company of Illinois ("Travelers") seeks to recover under a motor vehicle liability policy that OneBeacon America Insurance Company and Pennsylvania General Insurance Company (collectively, "OneBeacon") had issued to Leasing Associates, Inc. and LAI Trust (collectively "LAI"), a vehicle leasing agency.[1] Travelers settled a vehicle liability suit for $5,000,000 on behalf of Capform, Inc., which had leased the vehicle involved from LAI. Citing the OneBeacon/LAI policy, Travelers demanded that OneBeacon reimburse Travelers $1,000,000, the policy's limit. Although OneBeacon has admitted that its policy with LAI may be read to extend coverage to the Capform vehicle, it protested that the parties never intended such a result. Accordingly, OneBeacon asked the district court to reform the policy in light of "mutual mistake."[2] On cross-motions for summary judgment, the district court refused to reform the policy and ordered OneBeacon to pay the $1,000,000 to Travelers. We reverse.

---

[1] Travelers is now known as Travelers Property Casualty Company of America.

[2] OneBeacon's complaint sought a declaration that the policy at issue did not provide coverage for the accident and, alternatively, requested reformation based on mutual mistake. At least for purposes of this appeal, OneBeacon concedes that the policy can be read to provide coverage, and it thus focuses only on its claimed entitlement to reformation. We likewise focus on that issue.

**I.**

OneBeacon is an insurance company headquartered in Massachusetts. LAI, a Texas-based company that leases cars and trucks to businesses, contracted with OneBeacon for general insurance coverage for the company's vehicles.[3] The policy defines an "insured" to include:

> a. You for any covered auto.
> b. Anyone else while using with your permission a covered auto you own . . .

Although OneBeacon acknowledges that this language may be read to extend coverage to LAI's lessees, it says that neither it nor LAI intended that coverage.

Capform, Inc. is a Texas and Florida construction company that leased some of its vehicles from LAI. LAI's standard lease required lessees to insure the leased vehicles, at their own expense, either by applying to be added to the OneBeacon policy or through another insurer. Capform chose to insure its vehicles with Travelers. In 2001, a Capform employee in Florida, driving a Capform truck on long-term lease from LAI, struck and severely injured a pedestrian, Manuel Pedreira. Travelers defended Capform

---

[3] Technically, LAI is covered under two separate policies originally issued by Commercial Union Insurance Company, a predecessor-in-interest to OneBeacon, and under a third policy issued by Pennsylvania General. OneBeacon provides coverage under two Massachusetts-specific policies, and Pennsylvania General issued a "national" policy, the one at issue here, that covered eligible vehicles leased from all LAI offices other than the one in Needham, Massachusetts.

and eventually settled Pedreira's personal injury suit for $5,000,000.

During the settlement process, Travelers became aware of the policy OneBeacon had issued to LAI and read it to grant coverage for Pedreira's case. Travelers asked OneBeacon to contribute $1,000,000, the policy's single-occurrence limit, to the Pedreira settlement. OneBeacon refused and instead filed suit against both Travelers and LAI seeking a declaratory judgment that Capform was not covered by its policy. Alternatively, OneBeacon asked that the insurance contract be reformed to match the parties' intent that it would cover only those lessees who had specifically applied for, and been approved for, coverage under the OneBeacon policy. LAI was dismissed as a defendant after stating, in an "Agreement for Judgment" ("the Agreement"), that its OneBeacon policy did not cover lessees who purchased the required insurance coverage for their leased vehicles from insurers other than OneBeacon.

Both parties subsequently moved for summary judgment. OneBeacon argued that the Agreement, taken together with evidence of the course of conduct between it and LAI, and of the insurance obligations LAI imposed on its lessees, established that the parties were mutually mistaken when they executed a contract that did not exclude from coverage vehicles that lessees had chosen to insure independently. Travelers sought summary judgment based

-4-

primarily on the policy language.

The district court initially refused to grant judgment for either party, prompting the two companies to submit a joint motion for reconsideration stating their belief that "there are no material facts that require a trial" and asserting that "this action can and should be resolved through [the parties'] Motions for Summary Judgment." In response, the district court issued a two-page order granting summary judgment for Travelers, concluding that "OneBeacon has failed to 'present full, clear, and decisive proof of mistake.'" Dist. Ct. Order at 2 (quoting Polaroid Corp. v. Travelers Indem. Co., 610 N.E.2d 912, 917 (Mass. 1993)). Without elaborating, the court cited three factors for its decision: the "clear and unambiguous policy language," OneBeacon's inability to identify "any policy language that was included by mistake . . . or endorsement that was omitted by mistake," and "the Massachusetts public policy concerning motor-vehicle liability insurance."

## II.

On appeal, OneBeacon challenges the district court's conclusion that the evidence was insufficient to warrant reformation, arguing that the undisputed facts conclusively show that neither OneBeacon nor LAI intended insurance coverage under the OneBeacon policy for LAI lessees who did not individually apply for, and pay for, that coverage. The insurer also contends that

there was no public policy justification for refusing to reform the policy to conform to the parties' intent.  For reasons we shall explain, we agree.

## A. Jurisdiction and standard of review

The parties agree that the substantive contract law of Massachusetts applies in this diversity case.  We accept that choice.  See Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003).  The district court's summary judgment ruling is subject to de novo review.  McConkie v. Nichols, 446 F.3d 258, 260 (1st Cir. 2006).

## B. Mutual mistake and contract reformation under Massachusetts law

Under Massachusetts law, a written contract may be reformed if its language "does not reflect the true intent of both parties."  Polaroid, 610 N.E.2d at 917; see also Berezin v. Regency Sav. Bank, 234 F.3d 68, 72 (1st Cir. 2000); John Beaudette, Inc. v. Sentry Ins. A Mut. Co. 94 F. Supp. 2d 77, 142-43 (D. Mass. 1999); Mickelson v. Barnet, 460 N.E.2d 566, 569 (Mass. 1984).  Massachusetts courts have referenced the approach to mutual mistake articulated in the Restatement (Second) of Contracts.  See, e.g., Nissan Autos. of Marlborough, Inc. v. Glick, 816 N.E.2d 161, 165 (Mass. App. Ct. 2004); Howell v. Glassman, 600 N.E.2d 173, 175 (Mass. App. Ct. 1992).  The Restatement summarizes the applicable principles as follows:

> Where a writing that evidences or embodies an agreement in whole or in part fails to express

> the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may at the request of a party reform the writing to express the agreement, except to the extent that rights of third parties such as good faith purchasers for value will be unfairly affected.

Restatement (Second) of Contracts § 155 (2006). When a party asks for reformation of a contract, it is not asking the court to interpret the contract but rather to change it to conform to the parties' intent. See id. cmts. a, b. Accordingly, the usual restrictions on contract interpretation, such as the parol evidence rule, do not apply to a court's inquiry into the parties' intent. See Berezin, 234 F.3d at 72; Polaroid, 610 N.E.2d at 917. In a reformation case, it does not matter that a contract unambiguously says one thing. A court still will accept extrinsic evidence in evaluating a claim that both parties to the contract intended it to say something else.

The critical limitation in a contract reformation case is the burden of proof: to be entitled to reformation, a party must "establish that the undisputed material facts fully, clearly, and decisively show[] a mutual mistake," Polaroid, 610 N.E. 2d at 918; see also Lordi v. Lordi, 820 N.E.2d 813, 814 (Mass. 2005). Although "[t]he classic case for reformation" is when the mutual mistake can be traced to a typo or transcription error, a scrivener's error is not a prerequisite for reformation. E. Allan Farnsworth, Farnsworth on Contracts § 7.5 (2001). Mutual mistakes

justifying contract reformation may result simply from the parties' inattention.  See, e.g., Polaroid, 610 N.E.2d at 917 (discussing mistaken omission of a pollution exclusion from policies); De Vincent Ford Sales, Inc. v. First Mass. Corp., 146 N.E.2d 492, 494 (Mass. 1957) (basis for equitable relief sufficiently set forth where allegations claim mistake resulting from "inadvertence of the parties").  Such is the mistake urged by OneBeacon, which claims that neither it nor LAI realized – or intended – that the policy's broad definition of an "insured" extended coverage to LAI's lessees who had not independently insured the vehicles with OneBeacon.

The mistake that OneBeacon must demonstrate – to a high degree of certainty – is not that the outcome of its agreement differed from its expectations, but rather that the contract language did not express the agreement as originally intended.  See Restatement 2d § 155 cmt. a ("The province of reformation is to make a writing express the agreement that the parties intended it should.").  The distinction is between a contract that does not accurately reflect (hence misrepresents) the agreement of the parties and a contract that accurately reflects the intent of the parties but is premised on some mistaken fact.  Reformation is not available to correct mistaken factual assumptions about the parties' bargain, but may be used to correct misrepresentations of the parties' contractual intent.  The distinction is perhaps best understood through an illustration.  If, for example, two parties

-8-

intended their agreement to cover the sale of 100 acres in Boston, but the contract erroneously identified a different piece of property in Providence, their mutual mistake could provide the basis for reformation. If, however, the contract correctly referred to the intended sale of 100 acres in Boston, but the parcel turned out to be only 90 acres, the mistake would not concern the representation of their intent – and reformation could not be used to amend the original agreement. See Restatement 2d § 155 cmts. a, b. In short, reformation fixes a mistaken writing; it is not meant to fix a mistaken agreement.

Even if a mutual mistake in representation is proven, however, reformation may not necessarily be awarded. "Since the remedy of reformation is equitable in nature, a court has the discretion to withhold it . . . on grounds that have traditionally justified courts of equity in withholding relief." Restatement 2d § 155 cmt. d; see also Howell, 600 N.E.2d at 175; Farnsworth on Contracts, supra, § 7.5. For example, where the "rights of third parties such as good faith purchasers for value will be unfairly affected," reformation may be withheld even if otherwise appropriate. Restatement 2d § 155.

## C. The evidence of mutual mistake

The parties have both asserted that the facts are undisputed, and Travelers has offered no evidence beyond the policy language concerning the intent of OneBeacon and LAI at the time

they entered into that agreement. Consequently, in reviewing the grant of summary judgment for Travelers, our inquiry must focus on whether the court properly concluded that the undisputed facts on intent presented by OneBeacon were insufficient to establish "full, clear, and decisive proof of mistake," Polaroid, 610 N.E.2d at 917; in other words, given the undisputed facts, did the district court err in concluding that OneBeacon fell short of meeting the legal standard for reformation?

OneBeacon submitted various forms of evidence, including affidavits, the Agreement for Judgment, and lease documents that reflected the course of conduct between LAI and its lessees. Together, they paint a consistent picture showing that LAI intended to shift responsibility for liability coverage on its vehicles to the long-term lessees of those vehicles and that OneBeacon also operated on the assumption that it provided such coverage only when a lessee individually applied and was approved.

Paragraph 12 of LAI's standard lease agreement, labeled "Insurance," states that "Lessee shall at its sole cost keep each vehicle insured against liability for bodily injury, death and property damage." The provision then goes on to set minimum coverage limits and to require that LAI be named as an additional insured and the first loss payee, and that the coverage be with insurers acceptable to LAI. Paragraph 12 also addresses the option of obtaining insurance through LAI, "at Lessor's sole discretion."

If insurance is so provided, the lessee must agree "to pay the premium as may from time to time be established by Lessor as Additional Rent." The record also contains a document entitled "Lease Supplement – Insurance," which states that the lessor will obtain insurance coverage only for specifically identified vehicles and that the monthly rent payable under the lease may be increased in the sole discretion of the lessor to cover a premium increase.

The logical inference from these documents – that insurance under LAI's OneBeacon policy was limited to lessees who chose that option and paid for it – is reinforced by affidavits from the vice chairman of the insurance brokerage that handled LAI's coverage, Jane Calley, and from a OneBeacon underwriter, William Keen. Calley explained in detail the process by which LAI lessees obtained insurance under the OneBeacon policy by applying through her company, Brewer & Lord, and a copy of the application was attached to her affidavit. She reported that none of the application procedures had been followed by Capform, and she stated unequivocally that no coverage was afforded "if the lessee did not apply for insurance, meet the underwriting criteria and receive acceptance into the LAI Insurance Program."

To be approved for coverage, a lessee was required to provide Brewer & Lord with information on the driver or drivers and the vehicle to be insured, and the broker would check driving records and review vehicle-type information. Approved vehicles

-11-

would be included on lists that LAI provided monthly to Brewer & Lord, and which were then submitted to OneBeacon with premium calculations. Calley said it was her "understanding" that lessees were required to complete the lease supplement if approved for coverage under the OneBeacon policy. She further averred that OneBeacon and LAI

> did not intend that the . . . policies would afford coverage to lessees under long-term lease agreements where the lessee did not apply for such coverage under the LAI Insurance Program, did not meet [OneBeacon's] underwriting criteria and where the lessee was not accepted for coverage and did not pay a premium for the coverage.

Keen's much briefer affidavit repeated Calley's assertion that Capform did not apply for coverage through OneBeacon and also reiterated that, when the relevant policy was issued, OneBeacon intended that it would afford coverage only to lessees who had applied and been approved for coverage. He further stated that, to the extent the policy language did not reflect OneBeacon's intent, "it was a mistake."

Essentially the same representations were contained in the Agreement for Judgment between LAI and OneBeacon. It included an assertion that lessees were provided coverage through LAI's policies with OneBeacon "only if the lessee executed, in addition to the Standard Form Lease Agreement, the LEASE SUPPLEMENT – INSURANCE and a DRIVER APPLICATION, and if the application was accepted by or on behalf of OneBeacon or Pennsylvania General."

-12-

The Agreement further stated that Capform executed neither the lease supplement nor the driver application and that OneBeacon and Pennsylvania General "at no time" undertook to provide coverage to Capform for the vehicle involved in the Pedreira accident.

Travelers disparages virtually all of this evidence – challenging the basis for the affiants' knowledge and criticizing the "self-serving judgment" against LAI as unworthy of the court's consideration. We note initially that while Travelers properly may debate the potency of OneBeacon's proffered evidence on the issue of mutual mistake, arguing that it does not constitute "full, clear, and decisive proof of mistake," Polaroid, 610 N.E.2d at 917, Travelers' representation to the court that no material factual disputes existed forecloses it from challenging the factual assertions made by the affiants and contained in the Agreement for Judgment. Indeed, in keeping with this protocol, Travelers does not offer conflicting evidence, but attempts only to diminish the significance of OneBeacon's offerings.

In our view, however, the affiants were sufficiently involved in LAI's acquisition of insurance from OneBeacon to be considered reliable. Calley was a high level administrator for the insurance broker, and her statements conveyed a depth of knowledge about the relevant coverage procedures. She stated without qualification that the LAI insurance program did not provide coverage to lessees such as Capform, who had not applied to and

-13-

been approved by OneBeacon.

Keen likewise had a basis for personal knowledge because he oversaw the underwriting of the relevant policy. Given Calley's and Keen's roles, we believe that both affidavits, at least in the parts relevant here, satisfied the standards of Fed. R. Civ. P. 56(e), which provides that affidavits submitted in support of summary judgment must set forth admissible facts based on personal knowledge.[4] Moreover, the affiants' statements are consistent with the undisputed documentary evidence – the standard lease forms – showing that LAI and OneBeacon operated in the belief that the policy extended only to lessees who specifically applied for coverage.

As for the Agreement for Judgment, Travelers argues in its brief that the court should not consider any of its content, claiming that Travelers cannot be bound by the agreement because it was not a party to it. Travelers further argues that the Agreement's content does not constitute admissible evidence by individuals with personal knowledge of LAI's intent, and it emphasizes that the Agreement does not speak to LAI's intent

---

[4]In any event, any objection to our consideration of the affidavits has been waived because Travelers did not move to strike them in the district court, and the exception allowing belated objection to prevent "a gross miscarriage of justice" is without question inapplicable here. See Perez v. Volvo Car Corp., 247 F.3d 303, 314-15 (1st Cir. 2001); Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668, 682 (1st Cir. 1994); Lacey v. Lumber Mut. Fire Ins. Co. of Boston, 554 F.2d 1204, 1205 (1st Cir. 1977).

concerning coverage at the time it obtained the policy at issue. Travelers' argument that it is not "bound" by the statements contained in the Agreement is beside the point. The Agreement nevertheless is relevant on the question of the parties' intent. LAI <u>is</u> bound by the representations it made in the Agreement, <u>see</u> <u>BIW Deceived</u> v. <u>Local S6, Indus. Union of Marine And Shipbldg. Workers</u>, 132 F.3d 824, 828 (1st Cir. 1997); <u>Coughlin</u> v. <u>Regan</u>, 768 F.2d 468, 469-70 (1st Cir. 1985) ("[A] party to a consent judgment is thereby deemed to waive any objections it has to matters within the scope of the judgment."),[5] and LAI's assertions about the operation of its insurance program are – like the supporting documents – revealing on LAI's and OneBeacon's expectations regarding the policy.

Travelers also attempts to discredit the Agreement by declaring in its brief that "it stretches the boundary of believability that LAI would agree that too much coverage was afforded under the polic[y] and that it had an intent to obtain less coverage than was explicitly afforded under the unambiguous language . . . ." We find nothing inherently implausible about LAI's declarations, however. LAI's representation is that its leased vehicles were fully insured in ways other than under the

---

[5] An "agreed judgment" – another name for a consent judgment – "binds the parties as fully as other judgments" when it has been sanctioned by a judge. <u>Black's Law Dictionary</u> 858-59 (8th ed. 2004). The district court entered an order approving the LAI-OneBeacon Agreement.

policy language on which Travelers relies – and, indeed, the Travelers coverage purchased by Capform met LAI's stated requirement that lessees insure their vehicles independently if they chose not to apply for the OneBeacon coverage.

In our view, LAI's lease agreement, particularly when taken together with the lease supplement specifically addressing insurance, is compelling evidence that LAI intended that its own insurance coverage for a particular vehicle would terminate once the vehicle was leased. The process put in place to ensure continuing coverage by the lessee – either through another insurer or through OneBeacon – supports the inference that OneBeacon also assumed the policies would cover LAI-owned vehicles after they were leased only if the requisite application steps had been completed.[6] Thus, the course of conduct revealed by LAI's standard forms, together with the elaboration and affirmation provided by knowledgeable individuals, persuades us that the parties shared an intent to exclude vehicles from coverage once they were leased – unless the lessee followed the requisite procedures for obtaining

---

[6] As noted earlier, a successful application process resulted in a leased vehicle being included on a monthly list of insured vehicles submitted by LAI to Brewer & Lord, which in turn provided the list to OneBeacon. Consistent with that procedure, the policy contained an endorsement amending the definition of "insured" to include "any person or organization leasing a vehicle or vehicles from the named insured per monthly report filed with the company." Although this endorsement does not by its terms exclude lessees not on the list, it nonetheless can be read to provide support for LAI's and OneBeacon's position.

coverage under LAI's policy.

Travelers has identified no evidence that undermines the uniform picture painted by OneBeacon's evidentiary submissions. It asserts that OneBeacon has not pointed to "any specific endorsement, exclusion or other limiting language that they contend was mistakenly omitted when these policies were issued to LAI," noting that "[t]his is hardly surprising, inasmuch as the language in the policies" providing coverage to specified "insureds" is part of the boilerplate contained in standard auto industry policies. However, OneBeacon does, in fact, claim a critical omission of limiting language that would have excluded from coverage vehicles operated by long-term lessees who had not directly sought and obtained coverage under the policy.

In sum, the evidence submitted by OneBeacon is both ample and persuasive, and we therefore conclude that it has met its burden to provide "full, clear, and decisive proof of mistake," Polaroid, 610 N.E.2d at 917. Accordingly, barring any equitable concerns, OneBeacon is entitled to reformation of the relevant policies to exclude coverage for LAI-owned vehicles on long-term leases, unless the lessee has followed the requisite application procedures and obtained its own coverage under the OneBeacon policy.

-17-

## D. Equitable considerations

We see no equitable barriers here. Travelers makes a strained argument that reforming the insurance policy as OneBeacon requests would leave vehicles uninsured in violation of Massachusetts law and public policy. LAI's general lease form does not permit a vehicle to be acquired and operated by a lessee, however, unless the lessee has secured insurance coverage, either independently or under LAI's policy with OneBeacon. Assuming that Massachusetts law were to apply to vehicles under long-term lease that are registered and operated outside the state, Massachusetts' requirement that motor vehicle operators carry liability insurance would in no way be frustrated by the OneBeacon/LAI system.

In addition, the record contains no evidence showing detrimental reliance on an assumption that the OneBeacon policy covered Capform's leased vehicles. A representative for Travelers, Shirong Chen, testified in deposition that the company was unaware of the OneBeacon policy during the underwriting process for Capform, and Capform did not look to OneBeacon for coverage after the accident. From all that appears in the record, this was a case where everyone's expectations were the same – until Travelers read the boilerplate in the OneBeacon policies. In this instance, equity favors reforming the policy to reflect the contracting parties' intent.

Therefore, the district court's summary judgment for

appellee Travelers is reversed, and the court is directed to enter summary judgment for appellant OneBeacon providing for reformation of the policy consistent with our ruling.

So ordered.