TUCARD, LLC, Plaintiff,

v.

FIDELITY NATIONAL PROPERTY & CASUALTY INSURANCE COMPANY; HUB International New England, LLC; and Federal Emergency Management Agency, Defendants.

Civil Action No. 07–10873–DPW.

United States District Court, D. Massachusetts.

July 10, 2008.

Peter J. Nicosia, Nicosia & Associates, P.C., Tyngsboro, MA, for Plaintiff.

Gerald J. Nielsen, Michael C. Weber, Nielson Law Firm, Metairie, LA, Philip T. Tierney, Stimpson B. Hubbard, Finnegan, Underwood, Ryan & Tierney, Christopher P. Flanagan, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, Anita Johnson, United States Attorney's Office, Christine A. Knipper, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

DOUGLAS P. WOODLOCK, District Judge.

This litigation involves a flood insurance policy contract issued pursuant to the National Flood Insurance Program ("NFIP"). Tucard, LLC ("Tucard"), the insured, alleges that although it intended to insure the property it owned at 19 School Street / 100 Pleasant Street ("19 School Street"), the policy was mistakenly issued using Tucard's business mailing address of 303 Broadway Road. In 2006, during the policy period, the 19 School Street property sustained serious flood damage, and Tucard subsequently filed a claim for damages exceeding $300,000. After its claim was denied, Tucard filed a Complaint raising the following claims: breach of the insurance contract, misrepresentation, violation of Mass. Gen. Laws ch. 176D and 93A and negligence. In addition, Tucard seeks reformation of the insurance contract. The Federal Emergency Management

Agency ("FEMA") moves for dismissal of all the claims against it. Tucard has moved for summary judgment against all of the Defendants as to Count V of its Complaint, the reformation of contract claim, and HUB International New England, LLC ("HUB") has cross-moved for summary judgment on the reformation claim.

## I. Background

On December 12, 2005, HUB, acting as insurance agent, and Fidelity National Property & Casualty Insurance Company ("Fidelity"), acting as the insurer, issued a NFIP Standard Flood Insurance Policy ("SFIP") contract to Tucard. Tucard alleges that the policy was supposed to provide flood insurance coverage for a property Tucard owns at 19 School Street in Dracut, Massachusetts, but in its insurance application signed by a Tucard representative, the insured property was listed as 303 Broadway Road in Dracut. Based on the application, Fidelity issued Tucard an insurance policy covering the 303 Broadway Road property.

A Declarations Page was sent to Tucard stating coverage of the 303 Broadway Road property and a policy period from December 12, 2005 to December 12, 2006. On May 16, 2006, the 19 School Street property experienced flood damage estimated at $310,956.47. Tucard documented its claim and notified both HUB and Fidelity of the damage.

Tucard alleges that there was a mutual mistake on the part of the parties when the insurance policy was issued for 303 Broadway Road. Tucard's corporate office is a 150 square foot administrative space that it rents in the 303 Broadway Road building. Tucard is a month-to-month tenant at will and has no ownership interest in that property. In addition, 303 Broadway Road is not located in a flood zone and consequently does not require flood insur-

ance. According to Tucard, from 2002 to 2007, it only sought flood insurance for its 19 School Street property. Prior to the 2006 SFIP, Tucard insured 19 School Street through Travelers. In 2005, the property's flood zone changed to an AE zone, and Travelers informed Tucard that it would have to obtain separate flood insurance since the Travelers policy excluded coverage for properties located in any A flood zone. A standard flood hazard determination dated August 4, 2005 that was issued to Fidelity reflected the new flood zone classification for 19 School Street.

On November 22, 2006, Tucard and HUB contacted Fidelity to request that the insured property address be changed from 303 Broadway Road to 19 School Street. Although Fidelity agreed to collect an additional premium in exchange for issuing a new Declarations Page showing coverage of the 19 School Street property, Fidelity's Compliance Manager ultimately concluded that no change was possible without FEMA's approval. In an e-mail dated February 28, 2007, FEMA advised that the insurance policy could not be revised to cover the 19 School Street property. This appears to be FEMA's final view on the matter.

## II. Discussion

I address FEMA's jurisdictional arguments first and then turn to the reformation of contract claim.

### A. FEMA's Motion to Dismiss

#### 1. Standard of Review

A motion for dismissal is evaluated by "taking as true the well-pleaded facts contained in the complaint and drawing all reasonable inferences therefrom in the plaintiff's favor." *Phoung Luc v. Wyndham Mgmt. Corp.*, 496 F.3d 85, 88 (1st Cir.2007) (quoting *Garrett v. Tandy Corp.*, 295 F.3d 94, 97 (1st Cir.2002)) (Lipez, J.).

A party invoking federal jurisdiction bears the burden of proving its existence. *Murphy v. U.S.*, 45 F.3d 520, 522 (1st Cir.1995), *cert. denied*, 515 U.S. 1144, 115 S.Ct. 2581, 132 L.Ed.2d 831 (1995) (Stahl, J.). FEMA contends the doctrine of sovereign immunity bars subject matter jurisdiction for the claims asserted against it.

### 2. The National Flood Insurance Program

In 1968, Congress enacted the National Flood Insurance Act, which authorized the creation of the NFIP. The purpose of the NFIP is to provide "flood insurance, over a period of time, ... on a nationwide basis through the cooperative efforts of the Federal Government and the private insurance industry." 42 U.S.C. § 4001(d). FEMA is authorized to carry out the NFIP, 42 U.S.C. § 4011(a), and in 1983, FEMA implemented the "Write–Your–Own" ("WYO") program, which allows private insurance companies to offer flood insurance coverage pursuant to the terms of the SFIP. 44 C.F.R. § 62.23(a)-(c); *see Riverdale Mills Corp. v. Am. Modern Home Ins. Co.*, 122 F.Supp.2d 114, 117 (D.Mass. 2000).

Under the WYO program, the insurance company administers the SFIP by managing the adjustment, settlement, payment and defense of all insurance claims. 44 C.F.R. § 62.23(d). "WYO companies remit premiums collected, after deducting a scheduled amount for administrative expenses, to FEMA for deposit in the National Flood Insurance Fund.... Claims are thus paid from federal funds." *Studio Frames Ltd. v. Standard Fire Ins. Co.*, 483 F.3d 239, 244 (4th Cir.2007). WYO insurance companies are considered fiscal agents, but not general agents, of the federal government. 44 C.F.R. § 62.23(g); *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 165 (3d Cir.1998). They "are

solely responsible for their obligations to their insured under any flood insurance policies issued under agreements entered into with the Administrator, such that the Federal Government is not a proper party defendant in any lawsuit arising out of such policies." 44 C.F.R. § 62.23(g).

### 3. Sovereign Immunity

In order for Tucard to bring an action against FEMA, it must establish that the federal government has waived its sovereign immunity. *See In re Rivera Torres*, 432 F.3d 20, 23 (1st Cir.2005). "The standard for finding a waiver is quite stringent. A waiver must be unequivocally expressed ... and must be strictly construed in favor of the sovereign ... with ambiguities construed against waiver." *Id.* at 23–24 (internal quotation marks and citations omitted). Section 4072 of the National Flood Insurance Act, which provides a limited waiver of sovereign immunity, states:

> [FEMA's Administrator—"The Director"] shall be authorized to adjust and make payment of any claims for proved and approved losses covered by flood insurance, and upon the disallowance by the Director of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Director, may institute an action against the Director on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.

42 U.S.C. § 4072.

Where a WYO insurance company has handled the claim adjustment and denial

process and FEMA was not the decision maker, courts have been clear that the limited waiver of sovereign immunity in § 4072 does not allow an insured to bring a claim against FEMA. *See Van Holt*, 163 F.3d at 166 ("The statute provides that an insured may sue FEMA if it adjusts a claim and improperly refuses to pay benefits."); *Sutor v. FEMA*, Civil Action No. 06–1371, 2008 WL 1959693, at *3 (E.D.Pa. May 5, 2008) (collecting cases); *Zion Realty Corp. v. FEMA*, Civil Action No. 07–10830–GAO, 2007 WL 4200963, at *2 (D.Mass. Nov. 27, 2007) (finding no jurisdiction over FEMA under § 4072 where it was undisputed that the WYO company, and not FEMA, issued the policy and denied the claim); *Banks v. Paulison*, No. 3:06cv178/MCR, 2006 WL 2709002, at *3 (N.D.Fla. Sept. 20, 2006) (finding that sovereign immunity is only waived from "those actions which stem from FEMA's direct denial of an application, not actions in which a private corporation independent of FEMA denies a claim"); *Mason v. Witt*, 74 F.Supp.2d 955, 959 (E.D.Cal.1999) (same).

The Plaintiff relies upon two actions by FEMA in an effort to argue that FEMA was sufficiently involved in the denial of the Plaintiff's policy adjustment request to find a waiver of sovereign immunity. The first action is an e-mail from FEMA to Fidelity on February 28, 2007. In response to Fidelity's inquiry regarding whether Tucard was afforded coverage for the flood damages at 19 School Street when its policy was issued for 303 Broadway Road, FEMA replied: "An exception cannot be made." The second action involves a letter from FEMA that was sent in response to two letters from HUB in which FEMA stated:

> FEMA has considered the possibility of allowing a correction to the property location and providing coverage for the loss on May 16, 2006. However, in re-

considering our previous determination, FEMA has requested a copy of the lease agreement that Tucard has with the owners of 303 Broadway Road, Dracut, Massachusetts. This information has been requested by Fidelity a number of times, but to date a lease agreement has not been received. Until that documentation can be reviewed, the loss that occurred at [19 School] Street, Dracut, Massachusetts remains uncovered.

According to Tucard, these two actions show that FEMA was directly involved in the analysis and denial of Tucard's claim.

Despite FEMA's correspondence, it is undisputed that it was Fidelity which issued Tucard's SFIP and Fidelity which denied Tucard's claim pursuant to the SFIP. As the WYO company, Fidelity "shall arrange for the adjustment, settlement, payment and defense of all claims" arising from the policy it issued. 44 C.F.R. § 62.23(d). But where Fidelity has a question regarding coverage of a claim, FEMA provides technical assistance "to assist in clarification of coverage and claims questions." 44 C.F.R. Pt. 62, App. A, Art. IV(B)(2). FEMA's e-mail stating that "[a]n exception cannot be made" was simply technical assistance provided to Fidelity and HUB regarding claim coverage. Even if relied upon as justification for denial by Fidelity, it cannot obscure or transform the fact that it is Fidelity, not FEMA, that is the decision maker in the claim denied.

The terms of Tucard's policy were clear. "Only one building, which you specifically described in the application may be insured under this policy." 44 C.F.R. Pt. 61, App. A(2)(II)(20). In addition, "[t]his policy cannot be changed nor can any of its provisions be waived without the express written consent of FEMA's Federal Insurance Administrator." 44 C.F.R. Pt. 61,

App. A(2) (VII)(D). In this instance, no written consent from the Administrator was forthcoming and consequently, FEMA declined to provide any changes or waivers to the policy. But the fact remains that the claim was denied by Fidelity. In response to Fidelity's inquiry, FEMA assisted in clarifying the claim coverage by stating that 19 School Street was not covered by the existing SFIP. To the extent Tucard is arguing that FEMA's failure to issue an express written consent to modify the policy causes FEMA to fall within § 4072, I decline to adopt this reasoning and thereby extend the limited sovereign immunity waiver contained within the statute. Technical assistance and interpretive advice do not constitute the waiver of sovereign immunity contemplated by § 4072. Accordingly, I will grant FEMA's motion to dismiss based on sovereign immunity without reaching the other, apparently substantial, grounds FEMA also urges for dismissal.

## B. Cross–Motions for Summary Judgment

### 1. Standard of Review

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A material fact "has the potential to change the outcome of the suit under the governing law" and a genuine issue exists when "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93–94 (1st Cir.2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995)). "Once the moving party has demonstrated that no genuine issue of material fact exists, the burden of production shifts to the nonmovant to contradict the demonstration by coming 'forward with specific provable facts which establish that there is a triable issue.' " *Riverdale Mills*, 122 F.Supp.2d at 116–17 (quoting *Matos v. Davila*, 135 F.3d 182, 185 (1st Cir.1998)).

### 2. Reformation of the Insurance Contract

■ Tucard and HUB have both moved for summary judgment on the claim for reformation of the insurance contract. At the outset, I note that a reformation of contract claim is only applicable to the contractual parties. *See OneBeacon Am. Ins. Co. v. Travelers Indem. Co. of Illinois*, 465 F.3d 38, 41 (1st Cir.2006) ("When a party asks for reformation of a contract, it is not asking the court to interpret the contract but rather to change it to conform to the parties' intent."). Because the parties to the SFIP contract were Tucard and Fidelity, and HUB, as insurance agent, was not a party to that contract, HUB's intent is not relevant for purposes of reforming the SFIP contract. Tucard has not argued for reformation of any other contract that it has with HUB. Thus, I will grant HUB's motion for summary judgment as to reformation of the SFIP contract.

■ Tucard's reformation claim against Fidelity as to the SFIP contract requires more extended discussion. It is settled that federal law governs disputes over the coverage of SFIP contracts issued pursuant to the NFIP. *Atlas Pallet, Inc. v. Gallagher*, 725 F.2d 131, 135 (1st Cir.1984); *see also C.E.R.1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 268 (3d Cir.2004); *Battle v. Seibels Bruce Ins. Co.*, 288 F.3d 596, 607 (4th Cir.2002); *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 390 (9th Cir.2000), *cert. denied*, 531 U.S. 927, 121 S.Ct. 305, 148 L.Ed.2d 245 (2000); *Linder & Assocs., Inc. v. Aetna Cas. & Sur. Co.*, 166 F.3d 547, 550 (3d Cir.1999). The case

law conforms with Section IX of the SFIP, which provides that the "policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended, and Federal common law." 44 C.F.R. Pt. 61, App. A(2)(IX) (citation omitted).

■ Federal common law does incorporate standard insurance principles. "[A]lthough neither the statutory nor decisional law of any particular state is applicable ... [courts] are free to apply the 'traditional common law technique of decision by drawing upon standard insurance principles.'" *Atlas Pallet,* 725 F.2d at 135 (quoting *West v. Harris,* 573 F.2d 873, 881 (5th Cir.1978)). "In addition, because insurance policies are contracts, basic contract rules govern the interpretation of a policy's terms." *Id.*

■ That said, reformation of a SFIP contract is governed by different rules than ones that normally apply in an insurance dispute. *See Mancini v. Redland Ins. Co.,* 248 F.3d 729, 733 (8th Cir.2001) (Arnold, J.). A SFIP contract is governed by federal regulatory codifications. *See* 44 C.F.R. Pt. 61, App. A(2). As such, "strict adherence is required to all terms of the SFIP." *Forman v. FEMA,* 138 F.3d 543, 545 (5th Cir.1998). There is one limited provision under these regulations for SFIP contract reformation, and it only allows for reformation in certain situations when the policy premium paid is less than what is necessary to receive the requested policy coverage. *See* 44 C.F.R. Pt. 61, App. A(2)(VII)(G).

After Hurricane Katrina, several courts addressed the possibility of expanding SFIP contract reformation beyond this limited provision. *See Cure v. Louisiana Farm Bureau Cas. Ins. Co.,* Civil Action No. 06–5207, 2007 WL 4563449 (E.D.La.

Dec. 21, 2007); *Connell v. Allstate Ins. Co.,* Civil Action No. 06–4820, 2007 WL 4233830 (E.D.La. Nov. 28, 2007); *Englande v. Bradshaw Ins. Agency,* Civil Action No. 06–8572, 2007 WL 2461683 (E.D.La. Aug. 22, 2007). In each instance, after finding that the plaintiff did not fall within the express terms of the SFIP reformation provision, the court concluded that reformation was not possible. In *Englande,* for example, unbeknownst to either the insured or the insurer, the insured property's flood zone was reclassified from Zone A to Zone B. *Englande,* 2007 WL 2461683, at *1. The plaintiffs argued that due to the mutual mistake of the parties, the plaintiffs ended up paying higher premiums for coverage that was lower than what they were entitled to had the property been properly classified. *Id.* at *3. They sought retroactive contract reformation that would entitle them to higher coverage and a reimbursement of premiums paid. *Id.* Since the plaintiffs' premiums were too high, and the regulatory provision only provided for reformation when premiums were too low, the court concluded that retroactive reformation was not possible. *Id.* at *5.

■ Although such a narrow interpretation of the reformation provision may seem overly harsh, the law requires a court "to observe the conditions defined by Congress for charging the public treasury." *Fed. Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 385, 68 S.Ct. 1, 92 L.Ed. 10 (1947). Reformation is an equitable remedy available for insurance contracts, but in the context of federal flood insurance policies, it is only available in the limited circumstances provided by the SFIP. *Cf. Office of Pers. Mgmt. v. Richmond,* 496 U.S. 414, 426, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) (concluding that the "judicial use of the equitable doctrine of estoppel cannot grant respondent a money remedy

that Congress has not authorized"). Since the reformation request does not fit within the express scope of any SFIP provision, this remedy is unavailable to Tucard.

Such an austere treatment of the claims by those who claim ignorance of or mistake regarding the specifics of a federally regulated program is well established. In *Fed. Crop Ins. Corp. v. Merrill*, farmers were told by the government that their spring wheat, which was reseeded on winter wheat acreage, was insurable under the Federal Crop Insurance Act. 332 U.S. at 382, 68 S.Ct. 1. After the crop was destroyed by drought, the claim was denied, because the Federal Crop Insurance Act precluded recovery for "spring wheat which has been reseeded on winter wheat acreage in the 1945 crop year." *Id.* at 386, 68 S.Ct. 1. The Supreme Court held that "the Wheat Crop Insurance Regulations were binding on all who sought to come within the Federal Crop Insurance Act, regardless of actual knowledge of what is in the Regulations or of the hardship resulting from innocent ignorance." *Id.* at 385, 68 S.Ct. 1. As Justice Frankfurter went on to observe for the Court: "The circumstances of this case tempt one to read the regulation, since it is for us to read it, with charitable laxity. But not even the temptations of a hard case can elude the clear meaning of the regulation." *Id.* at 386, 68 S.Ct. 1. Similarly, the SFIP terms make clear that policy coverage only extends to the property address listed on the application. Even if the wrong address was used by mistake, Tucard is now bound by it.

■■■■ Although Fidelity did not separately move for summary judgment, this case presents circumstances ripe for the entry of summary judgment on its behalf. I may enter summary judgment *sua sponte* when two conditions are satisfied: 1) there has been a reasonable opportunity to glean material facts through the discovery process, and 2) the targeted party received appropriate notice and opportunity to present evidence on the essential elements of the claim or defense. *Sanchez v. Triple–S Mgmt., Corp.*, 492 F.3d 1, 7 (1st Cir.2007), *cert. denied*, —— U.S. ——, 128 S.Ct. 806, 169 L.Ed.2d 606 (2007). I conclude as a matter of law there are no grounds to reform Tucard's SFIP contract in light of the very narrow basis for reformation under the government regulations. When I raised this ground for summary judgment being granted to Fidelity, Tucard's counsel conceded the issue had been fully developed. Given the law on this issue, I find that no further discovery would alter the outcome. The record before me is sufficient to permit me to enter summary judgment as to Count V in favor of Fidelity. *See generally Bank v. Int'l Bus. Machs. Corp.*, 145 F.3d 420, 431 (1st Cir.1998) (holding that *sua sponte* entry of summary judgment appropriate in a contractual interpretation case since the contract was unambiguous and no further discovery was necessary).

## III. Conclusion

For the reasons stated more fully above, I GRANT FEMA's motion to dismiss (Docket No. 30); I GRANT HUB's motion for summary judgment (Docket No. 45); I DENY the Plaintiff's motion for summary judgment (Docket No. 33); and I GRANT summary judgment to Fidelity as to Count V.