

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-27-1999

# Linder & Assoc Inc v. Aetna Cslty & Surety

Precedential or Non-Precedential:

Docket 98-3049

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

## Recommended Citation

"Linder & Assoc Inc v. Aetna Cslty & Surety" (1999). *1999 Decisions*. Paper 22.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/22

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed January 26, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-3049

LINDER AND ASSOCIATES, INC.,

        Appellant

v.

AETNA CASUALTY AND SURETY COMPANY

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 96-cv-01124)
Honorable Francis X. Caiazza, District Judge

Argued: October 29, 1998

BEFORE: SLOVITER, GARTH and MAGILL,*
Circuit Judges

(Opinion Filed January 26, 1999)

Jeffrey P. Ward, Esq.
Richard A. Ejzak, Esq. (Argued)
Cohen & Grigsby
11 Stanwix Street
15th Floor
Pittsburgh, PA 15222-3115
Counsel for Appellant

_____
*Honorable Frank Magill, Senior United States Circuit Judge for the
Eighth Circuit Court of Appeals, sitting by designation.

          S. Asher Winikoff (Argued)
          DiBella & Geer
          322 Boulevard of the Allies
          3rd Floor
          Pittsburgh, PA 15222
          Counsel for Appellee

OPINION OF THE COURT

MAGILL, Senior Circuit Judge.

Linder and Associates, Inc. (Linder) appeals from the Magistrate Judge's1 order denying recovery for damages Linder sustained in the lower level of its building during a flood in 1996. Linder bases its claim for recovery on a flood insurance policy issued by Aetna Casualty and Surety Company (Aetna) pursuant to the National Flood Insurance Program (NFIP). The district court denied coverage,finding that the lower level was a basement and, thus, that Linder's damages were excludable under the policy's basement exclusion. We affirm.

I.

Linder owns a multi-level building located on Yunker Street in McKees Rocks, Pennsylvania, and uses the building to conduct its furniture retail and refurbishing business. Since 1988, Linder has obtained flood insurance for its building through Aetna, a "Write Your Own" (WYO) company under the NFIP. See 44 C.F.R. S 62.23-62.24.2 Aetna issued Linder a standard flood insurance policy (SFIP), the terms of which are prescribed by the Federal Emergency Management Agency's (FEMA's) regulations. See Nelson v. Becton, 929 F.2d 1287, 1288 (8th Cir. 1991); 42 U.S.C. S 4013; 44 C.F.R. S 61.4(a), 61.13. The SFIP

_____

1. The Honorable Francis X. Caiazza, United States Magistrate Judge for the Western District of Pennsylvania, who presided with the consent of the parties pursuant to 28 U.S.C. S 636(c).

2. Unless noted otherwise, all citations to the Code of Federal Regulations are to those revised as of October 1, 1995.

specifically excludes coverage for damages occurring in a "basement" of a building, see Article 6(F)(2), reprinted in App. at 18, and defines "basement" as "any area of the building, including any sunken room or sunken portion of a room, having its floor subgrade (below ground level) on all sides." Article 2, reprinted in App. at 11.

The lower level or alley side of Linder's building includes two garage doors used by trucks to pick up and deliver furniture incident to Linder's business. The lower level floor is approximately four inches below the threshold of the garage doors, and concrete ramps have been installed to facilitate entering and leaving. According to Linder's owner, the alley also was "a few inches down from the threshold" when he purchased the building in 1978. Trial Tr. at 105, reprinted in App. at 310. However, no one knows the exact height differential between the alley and the threshold at that time.

Between 1978 and 1996, crushed limestone gravel was dumped into the alley on four different occasions, raising the surface level of the alley to the same height as the threshold. The limestone had been dumped over the years for the sole purpose of keeping the alley level. No one is sure how much the alley has risen since 1978, but Linder's expert testified that he found two inches of crushed limestone adjacent to the garage doors in 1997.

A flood in January 1996 damaged most of the furniture stored in the lower level of Linder's building. After Linder filed a claim with Aetna under the SFIP, Aetna's claims adjuster, Robert Massof, investigated Linder's building. Mr. Massof determined that the entire lower level floor was below ground level. He believed that the lower level floor at the rear side of the building was below ground level because the floor was lower than the alley. Aetna, relying on the basement exclusion and Mr. Massof 's findings, refused to provide coverage for damages occurring in the lower level.

Linder subsequently filed suit,[3] contending that the lower

_____

3. Linder based federal jurisdiction under, inter alia, 42 U.S.C. S 4072. Although we originally questioned the existence of federal subject matter

level was not a "basement" as defined in the policy. Linder conceded that three sides of the lower level floor were well below ground level, but argued that the floor at the rear side of the building was not below ground level. Without supporting evidence, the insured argued the term"ground level" should be defined as the natural grade existing at the time the building was built, and not as the surface level of the built-up alley. The Magistrate Judge disagreed with Linder and, after a one day bench trial, entered judgment in favor of Aetna.

II.

It is well settled that federal common law governs the interpretation of the SFIP at issue here. See McHugh v. United Serv. Auto. Ass'n, ___ F.3d #6D6D 6D#, 1998 WL 665857, at *2 (9th Cir. Sept. 29, 1998); Carneiro da Cunha v. Standard Fire Ins. Co./Aetna Flood Ins. Program, 129 F.3d 581, 584 (11th Cir. 1997); Leland v. Federal Ins. Adm'r , 934 F.2d 524, 529 (4th Cir. 1991). Accordingly, "neither the statutory nor decisional law of any particular state is applicable to the case at bar." Sodowski v. National Flood Ins. Program, 834 F.2d 653, 655 (7th Cir. 1987) (quotations omitted).

We utilize "standard insurance law principles" to construe the SFIP. Id. (quotations omitted); see also Carneiro da Cunha, 129 F.3d at 584; Leland , 934 F.2d at 530. Under these principles, we interpret the SFIP in accordance with its plain, unambiguous meaning, see Carneiro da Cunha, 129 F.3d at 585; Sodowski , 834 F.2d at 656, remaining cognizant that its interpretation should be "uniform throughout the country" and that"coverage should not vary from state to state." Becton , 929 F.2d at 1291. Although exclusions and ambiguities in the policy are strictly construed against the insurer, we must give effect to the "[c]lear policy language," and refrain from "tortur[ing]

_____

jurisdiction under this statute and asked the parties for supplemental briefs, this court's recent decision in Van Holt v. Liberty Mutual Fire Insurance Co., ___ F.3d ___, No. 97-5098 (3d Cir. Nov. 25, 1998), makes clear that this statute does, indeed, confer subject matter jurisdiction of
this action in federal court. Id. at 10.

4

the language to create ambiguities." Selko v. Hole Ins. Co., 139 F.3d 146, 152 n.3 (3d Cir. 1998) (quotations omitted). If the policy is susceptible to two constructions, however, we will adopt the one more favorable to the insured. See Aschenbrenner v. United States Fidelity & Guar. Co. , 292 U.S. 80, 84–85 (1934).

In this case, we conclude that the SFIP clearly and unambiguously precludes coverage for damages in Linder's lower level. The SFIP defines "basement" as"any area of the building . . . having its floor subgrade (below ground level) on all sides." Article 2, reprinted in App. at 11. Each court considering the SFIP's basement exclusion has found its language to be clear and unambiguous. See Becton , 929 F.2d at 1289–90; Unger v. Liberty Mut. Ins. Co. , 849 F. Supp. 839, 846 (E.D.N.Y. 1994). "[I]t is obvious from Becton that the `ground level' referred to in the policy definition[ ] is intended to be that area close and adjacent to the lower level door." Unger, 849 F. Supp. at 846. If a person must step up when exiting the lower level to the outside, the lower level is below ground level and, thus, is a basement. See Becton, 929 F.2d at 1289 ("In order to go from that level out to the yard, it was necessary to go up at least one step. The floor levels therefore were subgrade . .. ."). This is true even if one must step up only an inch when going outside. See id. ("The extent to which they were subgrade, whether 6, 8, or 40 inches, is immaterial under the policy. The only question is whether they were subgrade or at ground level."). Conversely, if "one has to step up to enter the lower level and must step down when leaving the lower level," the lower level is not a basement. Unger, 849 F. Supp. at 846.

The parties disagree only as to whether the rear side of the lower level is below ground level. Aetna's claims adjuster testified that shortly after the flood, the alley was even with the threshold, which is approximately four inches above the lower level floor. To enter the lower level from the alley, it was thus necessary to step down onto the lower level floor. The lower level floor at the rear side of the building, therefore, is below ground level and, hence, is a "basement" as that term is defined in the SFIP. The district court did not err in its conclusion.

5

In an effort to avoid this obvious policy exclusion, Linder makes two arguments: (1) the district court clearly erred when finding that the alley surface was above the lower level floor at the time of the flood, and (2) the district court erred in defining "ground level" as the level of the alley outside the garage doors at the time of the flood. We summarily dispose of Linder's first argument. Linder points to testimony by its witnesses that the alley was lower than the lower level floor at the time of the flood. However, as explained above, Mr. Massof examined the building shortly after the flood and testified that the alley was even with the threshold, which is four inches above the lower level floor. Moreover, Linder's expert found only two inches of crushed limestone adjacent to the garage doors, thus suggesting that the alley was at least two inches higher than the lower level floor before the flood. When there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. See Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985). Accordingly, the district court did not clearly err in finding that the lower level was below the alley surface.

We also reject Linder's second argument. Linder contends that the term "ground level" is ambiguous and should be defined as the existing grade at the time Linder's building was originally constructed, which supposedly was lower than the lower level floor. However, construing "ground level" in the policy to mean the ground level surrounding Linder's building at some point in time other than the time of flooding seems unreasonable. Coverage under a flood insurance policy is predicated upon the occurrence of a flood. There cannot be a flood unless water rises above and flows over the existing ground level. It only makes sense, therefore, to equate "ground level" in the flood insurance policy as the ground level that was actually flooded, i.e., as the ground level at the time of the flood.

Moreover, Linder failed to present any admissible evidence suggesting that its proposed definition is a reasonable interpretation of the term "ground level." Linder contends that its proposed definition is supported by an "Outline Guide to the Standard Flood Insurance Policy" which should have been considered as a party admission

6

under Federal Rule of Evidence 801(d)(2)(C) and (D). 4 We believe that the district court appropriately exercised its discretion in excluding this document, see Glass v. Philadelphia Elec. Co., 34 F.3d 188, 191 (3d Cir. 1994) (review for abuse of discretion), because it is clear that the Outline Guide was not admissible as a party admission.

The Outline Guide was drafted by Computer Sciences Corporation, a "fiscal agent" of the NFIP that "does not underwrite flood insurance policies" and does not have "ultimate authority over the issuance of policies and the approval or denial of claims." Berger v. Pierce, 933 F.2d 393, 395 (6th Cir. 1991). Apparently, Liberty Mutual Insurance Company, a WYO company like Aetna, produced the Outline Guide during trial in a different suit concerning coverage under a SFIP. See Unger v. Liberty Mutual Ins. Co., 849 F. Supp. 839, 841 (E.D.N.Y. 1994). In that litigation, Liberty Mutual asserted that the Outline Guide provided a binding interpretation of the term "ground level" in the SFIP. Because Liberty Mutual was defending itself in its capacity as a WYO company in that case, Linder contends that the Outline Guide should have been admitted in this case as a party admission. Linder's argument proceeds along these lines: Liberty Mutual, as a WYO, is an agent of FEMA; Liberty Mutual's assertion that the Outline Guide provided a binding interpretation of the term "ground level" in the SFIP constitutes a binding admission on behalf of

_____

4. In pertinent part, the Outline Guide provides the following:

      2. basements*

      a. a basement is any area of a building whose floor is below ground level on all sides

       (1) ground level means the naturally existing grade at the time of original construction

        (a) backfill against the structure after original construction does not create a basement

       . . . .

       (5) if any portion of the floor in question is at or above ground level, the area is not a basement.

Outline Guide S VI(B)(2), reprinted in  App. at 70-71.

FEMA to the same effect; FEMA's purported admission of the Outline Guide's applicability to determinations of coverage under the SFIP is binding on FEMA's agents; and Aetna, as a WYO company, is now bound by the Outline Guide's definition of "ground level."

There are several flaws in Linder's argument. Most notably, this court recently explained that "WYO companies are not general agents of the federal government." Van Holt v. Liberty Mut. Fire Ins. Co., ___ F.3d ___, No. 97-5098, at 7 (3d Cir. Nov. 25, 1998). The Federal Regulations support this conclusion. See 44 C.F.R. S 62.23(g) ("WYO Companies shall not be agents of the Federal Government"). Moreover, counsel for FEMA has asserted that "[t]he Outline Guide was not adopted by FEMA nor was it approved by FEMA; and therefore it is not an official FEMA document." Letter from Margaret M. Bees, Trial Attorney for FEMA, to David M. Paul, counsel for Linder, and Stanley A. Winikoff, counsel for Aetna (Nov. 4, 1997), reprinted in App. at 146. Furthermore, when advocating this particular definition of "ground level" before the district court, Linder's counsel told the court that "we right now can't represent to the Court that [this proposed definition] is an existing PHEMA [sic] guideline . . . ." Trial Tr. at 83, reprinted in App. at 288. Accordingly, the district court did not abuse its discretion in refusing to admit the Outline Guide as a party admission.5

In sum, FEMA, which "fixes the terms and conditions of the" SFIP, Van Holt, No. 97-5098, at 7, explicitly disavows Linder's proposed definition of the term "ground level." Moreover, neither FEMA nor any court has ever advocated or accepted a definition of "ground level" other than that espoused by the Becton and Unger courts. To give credence to Linder's proposed definition, we would be straining to

_____

5. In one paragraph of the fact section of its opening brief, Linder also complains that the Magisrate Judge wrongfully excluded a government document setting forth a definition of "natural grade." See Appellant's Br.
at 12-13. Because Linder failed to present any argument on this matter, we hold that Linder has waived any challenge to the exclusion of that document. See Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993) (holding that "casual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on appeal").

find an ambiguity where none exists, an exercise that we will not undertake. See St. Paul Fire & Marine Ins. Co. v. United States Fire Ins. Co., 655 F.2d 521, 525 (3d Cir. 1981).

III.

For the foregoing reasons, we will affirm the order of the Magistrate Judge.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit