**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2733
_____

MICHAEL S. TORRE; GERALDINE A. TORRE,
Appellants

v.

LIBERTY MUTUAL FIRE INSURANCE COMPANY;
FEDERAL EMERGENCY MANAGEMENT AGENCY
(FEMA)
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 3-13-cv-06665)
District Judge:  Honorable Anne E. Thompson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 25, 2015

Before:  AMBRO, VANASKIE and SLOVITER,
Circuit Judges

(Opinion filed: March 26, 2015)

Michael S. Torre
Geraldine A. Torre
281 Vineyard Road
Huntington Bay, NY 11743

*Pro Se Appellants*

Keith M. Detweiler, Esq.
Gerald J. Nielsen, Esq.
Nielsen Law Firm
3838 North Causeway Boulevard
Suite 2850
Metairie, LA 70002

*Attorney for Appellee*

_____

OPINION OF THE COURT
_____

PER CURIAM

    Michael S. Torre and Geraldine A. Torre appeal from the order of the District Court entering summary judgment in favor of Liberty Mutual Fire Insurance Company ("Liberty"). We will affirm.

I.

    The Torres (husband and wife) own land and a house at 1234 Ocean Avenue in Mantoloking, New Jersey. They also hold a National Flood Insurance Program Dwelling Form Standard Flood Insurance Policy ("SFIP") issued by Liberty under the National Flood Insurance Act of 1968. The Act

established the National Flood Insurance Program, which "is underwritten by the United States Treasury in order to provide flood insurance below actuarial rates." Suopys v. Omaha Prop. & Cas., 404 F.3d 805, 807 (3d Cir. 2005). The terms of the SFIP are prescribed by regulation and set forth at 44 C.F.R. pt. 61, App. A(1). Id. at 807.

The Torres' property sustained substantial damage during Hurricane Sandy, and they submitted claims under the SFIP for that damage to Liberty. This dispute concerns coverage for the cost of removing storm-generated debris not owned by the Torres from portions of their land. Liberty administered a total payment[1] to the Torres of $235,751.68, which included the cost of removing debris from their house. The Torres sought an additional payment of $15,520 for the cost of removing sand and other debris deposited on their land in front of and behind their house.[2] Liberty denied that claim on the ground that the SFIP does not cover it.

---

[1] As Liberty notes, it does not make payments under the SFIP. Liberty instead merely administers the federal program, and "[i]t is the Government, not the [insurance] companies, that pays the claims." C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co., 386 F.3d 263, 267 (3d Cir. 2004).

[2] The Torres argue that their claim also included the cost of removing debris from their garage, and they now dispute Liberty's assertion that it paid that cost. The Torres have waived this claim for the reasons explained in note 7 below. Thus, our discussion will focus solely on the removal of debris from the Torres' land outside their house.

3

The Torres then filed suit against Liberty in New Jersey state court seeking payment of the $15,520, and Liberty removed the suit to federal court. The Torres thereafter filed an amended complaint asserting a claim against the Federal Emergency Management Agency ("FEMA") as well, but they voluntarily withdrew that claim. The parties ultimately filed motions for summary judgment after agreeing that there were no material facts in dispute because the sole issue before the District Court was one of contractual interpretation. The District Court denied the Torres' motion, granted Liberty's motion, and entered judgment in Liberty's favor. The Torres appeal.[3]

## II.

The sole issue on appeal is whether the SFIP covers expenses for removing debris not owned by the Torres from their land outside their house. The debris-removal provision states that "[w]e will pay the expense to remove <u>non-owned debris that is on or in insured property</u> and debris of insured property anywhere." 44 C.F.R. Pt. 61, App. A(1), Art. III(C)(1)(a) (2009) (emphasis added).[4] This appeal turns on the meaning of the term "insured property." The Torres argue that "insured property" means not only the specific structures and items of property that are insured by the SFIP (such as their house) but their entire parcel of land. Liberty, by

---

[3] The District Court had jurisdiction under 42 U.S.C. § 4053, and we have jurisdiction under 28 U.S.C. § 1291. Our review of the entry of summary judgment is plenary. <u>See</u> <u>Suopys</u>, 404 F.3d at 809.

[4] All citations to the SFIP herein are to 44 C.F.R. Pt. 61, App. A(1).

4

contrast, argues that "insured property" means only the property insured under the SFIP and that the SFIP does not cover land.

The SFIP does not define the term "insured property," so we must interpret that term as it appears in the SFIP's debris-removal provision. We appear to be the first Court of Appeals to do so. Cf. Dickson v. Am. Bankers Ins. Co. of Fla., 739 F.3d 397, 399, 401 (8th Cir. 2014) (not reaching the issue). "It is well settled that federal common law governs the interpretation of the SFIP at issue here." Linder & Assocs. v. Aetna Cas. & Sur. Co., 166 F.3d 547, 550 (3d Cir. 1999). Thus, "[w]e utilize standard insurance law principles to construe the SFIP." Id. (quotation marks omitted). "Under these principles, we interpret the SFIP in accordance with its plain, unambiguous meaning." Id. If the SFIP is ambiguous and reasonably "susceptible to two constructions, however, we will adopt the one more favorable to the insured." Id. Having applied these principles, it is clear that Liberty's interpretation of "insured property" is the only reasonable one when viewed in light of the SFIP as a whole.

We begin with the common-sense observation that the term "insured property" means property that is insured. Not surprisingly, that is FEMA's understanding of the term as well.[5] The SFIP specifies in great detail which items of

---

[5] FEMA's Flood Adjuster's Claims Manual, which is "incorporated by reference into the FEMA regulations," Suopys, 404 F.3d at 811 (citing 44 C.F.R. § 62.23), explains with regard to debris removal that "[i]nsured property means property we insure—i.e., the described building and covered contents." FEMA Claims Adjuster Manual V-15 (2010).

5

property it covers and which it does not. Article III(A), titled "Coverage A—Building Property," provides coverage for damage to a dwelling and other specified structures as well as various items of property associated with those structures. Article III(C), titled "Coverage C—Other Coverages," provides coverage for certain other kinds of losses and includes the debris-removal provision at issue here. (The SFIP also provides other forms of coverage in Articles III(B) and III(D), but they are not currently relevant.) Conversely, Article IV is titled "Property Not Covered" and specifies what property the SFIP does not insure. Article IV specifies that "[w]e do not cover . . . "[l]and, land values, lawns, trees, shrubs, plants, [or] growing crops." Art. IV(6) (emphasis added). Article IV also specifies that the SFIP does not cover, inter alia, "[f]ences, retaining walls, seawalls, [or] bulkheads," Art. IV(12), or "[t]hose portions of walks, walkways, decks, driveways, patios and other surfaces . . . located outside the perimeter, exterior walls of the insured building." Art. IV(9).

In sum, the SFIP provides coverage for certain structures and other items of property but not for an entire parcel of land. The entire parcel of land thus cannot constitute "insured property" because it is not insured by the SFIP at all. And because the entire parcel of land does not constitute "insured property," the provision of the SFIP requiring Liberty to pay for the removal of non-owned debris that is "on or in insured property" does not apply to the expenses the Torres incurred in removing non-owned debris from their land outside their home. Art. III(C)(1)(a).

The Torres raise essentially four arguments in an effort to avoid this rather obvious result. We disagree with each.

6

First, they argue that the term "property" should be given its ordinary meaning and that its ordinary meaning includes land. They further argue that term "insured property" refers to their land at 1234 Ocean Avenue in its entirety because that is the property listed on the Declarations Page and thus is the "property" that is insured. The Declarations Page is indeed part of the SFIP, see Art. II(B)(10), and the SFIP refers to the location "shown on the Declarations Page" as the "described location," Art. II(B)(11). The SFIP, however, expressly distinguishes between the "described location" and the "insured property." See, e.g., Art. V(A)(2), (3) (providing that "we do not pay you for . . . [l]oss of access to the insured property or described location" or "[l]oss of use of the insured property or described location") (emphasis added). If the meaning of "insured property" were coextensive with the "described location"—i.e., the location "shown on the Declarations Page"—then there would be no need to distinguish the two. The SFIP, however, does precisely that.

Second, the Torres argue that the debris-removal provision cannot be limited to debris removed from a building because, if it were, it would be contained in the article specifically governing buildings (i.e., "Coverage A— Building Property") instead of the article governing "other coverages." In so contending, the Torres misunderstand the structure of the SFIB, which is organized by type of *coverage* rather than type of *insured property*. Coverage A addresses the coverage provided for "direct physical loss by or from flood," Art. III(A), which is defined as "[l]oss or damage to insured property, directly caused by a flood. There must be evidence of physical changes to the property." Art. II(B)(12). The cost of removing debris does not constitute that kind of loss, and it is thus logical that it should be addressed in a

7

different article.  Moreover, it is conceivable that non-owned debris could be in or on property insured under Coverage B (personal property) but not Coverage A, particularly if the debris is found in or on personal property that is in turn inside a fully constructed "building" that is neither a "dwelling" nor a "garage."  (This result follows from the fact that Article IV exempts from coverage personal property not in a building, but Coverage A extends only to dwellings, garages, and buildings under construction.  See Art. IV(1), Art. III(A)(1), (3), (5).)

Third, the Torres argue that the debris-removal provision would be superfluous if limited to the removal of non-owned debris from a building because coverage for such removal already is provided by the "clean-up" provision of Article III(A)(8)(b).  But Article III(A)(8)(b) only covers clean-up associated with '[i]tems of property in a building enclosure below the lowest elevated floor of [certain buildings in enumerated places], or in a basement.'  Art. III(A)(8).  The SFIP does not define "clean-up," but whatever its precise meaning it refers only to clean-up associated with specific items of property contained in a specific area of a building.  Thus, the provision does not cover the removal of non-owned debris from a building as a whole.  Such removal is covered instead by the debris-removal provision at issue here.

Finally, the Torres assert that interpreting "insured property" to mean both buildings and the land is consistent with the purpose of the National Flood Insurance Act of 1968 to "protect real property which includes the land and any structure erected on the land."  (Appellants' Br. at 13) (citing 42 U.S.C. § 4011(a).)  The Torres have not developed any

8

meaningful argument in this regard, but their assertion cannot be squared with the fact that the SFIP has long provided that it does not cover land. See Art. IV(6).[6] There is no reason to believe that the provision covering the removal of non-owned debris from "insured property" covers the removal of debris from the land when the SFIP expressly disclaims coverage of the land itself.[7]

---

[6] The Torres have not argued that the SFIP promulgated by FEMA is inconsistent in this respect with any statute enacted by Congress. We thus do not address that issue, though in so noting we do not suggest that there may be any viable argument in that regard.

[7] In addition to their arguments regarding the SFIP, the Torres argue that Liberty failed to pay the cost of removing debris from their garage and that their garage is "insured property" because it is covered by Coverage A. In that regard, they dispute Liberty's assertion that it paid $5,179.34 for that purpose and argue that the District Court should have decided what portion of their claim concerns debris removed from the garage. As Liberty argues, the Torres have waived this claim. They concede in their brief that "both parties agreed [before the District Court] that there was no question of fact to be resolved." (Appellants' Br. at 4.) Indeed, at the outset of their certification in opposition to Liberty's motion for summary judgment, the Torres argued that "[i]t is clear that the sole issue before the Court is the meaning of" the debris-removal provision. (ECF No. 18 at 1 ¶ 2.) Moreover, after Liberty asserted in its statement of uncontested facts that it paid for "removal of debris from the garage" (ECF No. 17-2 ¶ 10) and provided evidentiary support (ECF No. 17-4 at 4 ¶ 13), the Torres presented no evidence to the contrary and did

In sum, we conclude that the term "insured property" clearly and unambiguously means property that is insured under the SFIP, that land is not insured under the SFIP, and that the SFIP thus does not cover costs the Torres incurred in removing debris not owned by them from their land outside their home.[8]

---

not otherwise specifically dispute this point (ECF No. 18 at 3 ¶¶ 7 & 8).

[8] Our conclusion is supported by the only decision that the parties have cited in which another court has addressed a similar claim. See Keating v. State Farm Fire & Cas. Co., No. 01-5057, 2002 WL 32348340 (E.D. Pa. Mar. 15, 2002). In that case, the insureds sought coverage under a former version of the SFIP for, inter alia, costs to facilitate the removal of "all debris due to flooding waters" on their land. Id. at *1. The Court dismissed their complaint and concluded that: "When read in its entire context . . . the terms of the contract are clear and unambiguous that coverage is for the building only, and that [non-owned] debris removal is covered only if the debris is in or on the building." Id. at *3. The debris-removal provision at issue here is worded differently, but the differences are not material. See National Flood Insurance Program (NFIP); Insurance Coverage and Rates, 65 Fed. Reg. 60758, 60760 (Oct. 12, 2000) (noting that linguistic revisions "simplif[ied] the debris removal provisions"). We have located only one other decision that addresses the debris-removal provision. See Dickson v. Am. Bankers Ins. Co. of Fla., No. 1:12-cv-022, 2013 U.S. Dist. LEXIS 183163 (D.N.D. Mar. 18, 2013), rev'd on other grounds, 739 F.3d 397 (8th Cir. 2014). In that case, the Court concluded that the provision does indeed cover the removal of

### III.

For the foregoing reasons, we will affirm the judgment of the District Court. The Torres' motion to strike Liberty's brief for untimely service is denied.

---

non-owned debris from the land. See id. at *18-22. The Court in Dickson did not address Keating, however, and it provided very little reasoning and no legal support for its conclusion. For these reasons and those explained above, Dickson is not persuasive on this point.