# United States Court of Appeals
## For the First Circuit

No. 14-1370

JACOB MATUSEVICH,

Plaintiff, Appellant,

v.

MIDDLESEX MUTUAL ASSURANCE COMPANY,

Defendant, Appellee,

FEDERAL EMERGENCY MANAGEMENT AGENCY,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Kayatta, Circuit Judges.

Seth H. Hochbaum, with whom Regnante, Sterio & Osborne LLP, was on brief, for appellant.
Joseph J. Aguda, Jr., with whom Gerald J. Nielsen, Nielsen Carter & Treas, LLC, David W. Zizik, and Zizik, Powers, O'Connell, Spaulding & LaMontagne PC, were on brief, for appellee.

April 1, 2015

**TORRUELLA, <u>Circuit Judge</u>.** This case arises from Appellee Middlesex Mutual Assurance Company's ("Middlesex Mutual") denial of Appellant Jacob Matusevich's flood loss claim following a flood that damaged the lower level of his home and numerous belongings. After the parties filed cross motions for summary judgment, the district court granted Middlesex Mutual's motion and denied Matusevich's. Matusevich now appeals, arguing that the district court erred in holding that the lower level of his home qualified as a "basement" under the Standard Flood Insurance Policy ("SFIP") issued by Middlesex Mutual and authorized by the Federal Emergency Management Agency ("FEMA") as part of the National Flood Insurance Program ("NFIP"). Finding no error with the district court's interpretation of the SFIP, we affirm.

## I. <u>Background</u>

### A. The National Flood Insurance Program

In the 1960s, there was a concern that, due to the high costs and damages associated with floods, private insurers were not providing adequate flood insurance in many areas prone to flooding. <u>See</u> 42 U.S.C. § 4001(b)(1). To address this growing problem, Congress enacted the National Flood Insurance Act of 1968 ("NFIA"). <u>See</u> <u>id.</u> §§ 4001-4131. The NFIA, in turn, created the NFIP, which is administered by FEMA and backed by the federal treasury. <u>Id.</u> §§ 4011(a), 4017(a). The purpose of the NFIP is, in part, to remedy the lack of flood insurance in flood-prone areas by offering

subsidized flood insurance, thus increasing its availability.  Id. § 4001(b).  The NFIP is also intended to change building practices in order to deter future flood risk -- and thus hopefully reduce future losses to life and property due to floods -- through the adoption of floodplain management and mitigation initiatives.  Id. §§ 4001(e), 4002(b)(3); 44 C.F.R. § 60.1.

The NFIP is administered by FEMA, which, in turn, is authorized to "prescribe regulations establishing the general method or methods by which proved and approved claims for losses may be adjusted and paid."  42 U.S.C. § 4019.  Accordingly, in 1983, FEMA created the Write-Your-Own ("WYO") program, which allowed private insurance companies, such as Middlesex Mutual, to issue flood insurance policies as part of the NFIP.  44 C.F.R. §§ 62.23-24.  Under the WYO program, the companies are essentially administrators of the federal program who "act as 'fiscal agents of the United States'"; they are not general agents.  McGair v. Am. Bankers Ins. Co. of Fla., 693 F.3d 94, 96 (1st Cir. 2012) (quoting Palmieri v. Allstate Ins. Co., 445 F.3d 179, 183-84 (2d Cir. 2006)).  Indeed, "[i]t is the Government, not the companies, that pays the claims."  Id. (quoting Palmieri, 445 F.3d at 183-84).

Private insurance companies participating in the WYO program are required to issue SFIPs containing the terms and conditions prescribed by FEMA and "subject to interpretation by the Federal Insurance Administrator as to scope of coverage."  44 C.F.R

§ 61.4; see also id. pt. 61, App. A(1) (providing the SFIP). The regulations provide that "no provision of the [policy] shall be altered, varied, or waived other than by the express written consent of the Federal Insurance Administrator." Id. § 61.13(d).

## B.  Matusevich's Claim

The parties do not dispute the material facts. Since 1992, Matusevich has owned a two-level house in Swampscott, Massachusetts. The floor of the lower level, which consists of several finished rooms, is subgrade on three sides. The fourth side of the lower level is located at the rear of the house and contains a doorway which directly opens out into a backyard. The backyard contains an in-ground swimming pool (built by the prior owners in 1977) surrounded by a concrete apron which slopes down from the edge of the pool to the rear of the house. Though there are neither steps nor a ramp, one must step up slightly to exit the house onto the concrete apron.

In November 2008, Matusevich obtained an SFIP from Middlesex Mutual (the "Policy"). The Policy afforded coverage for "direct physical loss by or from flood to [Matusevich's] insured property" so long as Matusevich: (1) "paid the correct premium"; (2) "compl[ied] with all terms and conditions of the policy"; and (3) "furnished accurate information and statements." The Policy

excluded coverage[1] for damage occurring in a "basement," which the Policy defined as "[a]ny area of the building, including any sunken room or sunken portion of a room, having its floor below ground level (subgrade) on all sides."  The Policy's term was for one year but was renewed for successive one-year terms in November 2009 and November 2010.  Throughout the three years of coverage, Matusevich paid his premiums on time and in full.

On October 4, 2011, Swampscott was hit with torrential rain and flash flooding.  Between thirty-nine and fifty inches of water flooded the lower level of Matusevich's home, causing damage to the lower level and its contents.  Matusevich filed two flood loss claims to Colonial Claims Corp. -- the adjuster retained by Middlesex Mutual -- in the amounts of $12,159.82 and $136,588.19. Middlesex Mutual paid the smaller claim but rejected the larger claim because it concluded that the lower level of his home was a "basement" under the Policy.[2]  Matusevich appealed the decision to

---

[1]  The Policy does provide limited coverage for a small number of enumerated items even if the item is located in a basement.  These items include certain fixtures (e.g., central air conditioners, furnaces, insulation, and water pumps) and personal property (e.g., major appliances like washers, dryers, and freezers).

[2]  The smaller claim was submitted "strictly as an advance Partial Proof of Loss for undisputed amounts owed."  According to a November 29, 2011, letter from Middlesex Mutual to Matusevich, Middlesex Mutual was denying the larger claim due to the basement exclusion but was paying the smaller claim because some of the damage was to items specifically enumerated in the Policy as being covered regardless of location.  See supra note 1.

FEMA's Federal Insurance Administrator, but the decision was upheld.

Following this denial, Matusevich filed suit in the district court. As part of discovery, the parties' representatives inspected Matusevich's home and took field measurements. The floor of the lower level of the house was found to be 3.49" higher than the soil/ground underneath the concrete apron. The concrete apron, meanwhile, is 4.25" thick, so the lower level of the house was found to be 0.76" lower than the surface of the concrete apron. As a result, if the soil/ground underneath the concrete apron is the proper measuring point for determining if the fourth side of the lower level is "below ground level (subgrade)," then all four sides of the lower level are not "below ground level (subgrade)," the lower level is not a "basement," and the damage caused by the flood is covered under the Policy. If, however, the proper measuring point is the top of the concrete apron, then all four sides of the lower level are "below ground level (subgrade)," the lower level is a "basement," and the damage from the flood is excluded under the Policy.

Given these stipulated measurements, the parties filed cross motions for summary judgment. The district court concluded that the proper measuring point is the top of the concrete apron, and therefore the lower level of Matusevich's home qualifies as a "basement" under the Policy. Accordingly, the district court

granted Middlesex Mutual's motion and denied Matusevich's motion. Matusevich timely appealed.

## II.  Discussion

### A.  Standard of Review

We review a district court's grant or denial of summary judgment de novo.  See DeCosta v. Allstate Ins. Co., 730 F.3d 76, 81 (1st Cir. 2013); McGair, 693 F.3d at 99.  "Summary judgment is warranted where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" McGair, 693 F.3d at 99 (quoting Fed. R. Civ. P. 56(a)).  Where, as here, there are cross motions for summary judgment, we evaluate each motion independently and determine "whether either of the parties deserves judgment as a matter of law on facts that are not disputed."  Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004) (quoting Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)) (internal quotation marks omitted).  Because this is a dispute over the coverage of insurance policies under the NFIP, federal common law controls.  Atlas Pallet, Inc. v. Gallagher, 725 F.2d 131, 135 (1st Cir. 1984).

### B. The Lower Level of Matusevich's Home Is a "Basement"

In the insurance context, if the facts upon which liability is claimed or denied are undisputed, then "the existence or amount of liability depends solely upon a construction of the policy, [and] the question presented is one of law for the court to

decide."   Id. at 134.   That is the precise scenario currently before us: the parties do not dispute that the fourth side of the lower level of Matusevich's home is 0.76" lower than the surface of the concrete apron and 3.49" higher than the soil/ground underneath it.   Rather, the debate is over which measurement is applicable in deciding whether this fourth side is "below ground level (subgrade)," and thus whether the lower level falls under the Policy's basement exclusion.   After careful consideration, we conclude that the proper measuring point is the surface of the concrete apron.

The Policy defines a "basement" as "[a]ny area of the building, including any sunken room or sunken portion of a room, having its floor below ground level (subgrade) on all sides."  As the Third Circuit succinctly stated in Linder & Associates, Inc. v. Aetna Casualty & Surety Co.,

> [c]overage under a flood insurance policy is predicated upon the occurrence of a flood. There cannot be a flood unless water rises above and flows over the existing ground level.  It only makes sense, therefore, to equate 'ground level' in the flood insurance policy as the ground level that was actually flooded . . . .

166 F.3d 547, 551 (3d Cir. 1999).  We agree.  Here, the water rose over the concrete apron, flowed down the slope of the apron towards Matusevich's home, and dropped an additional 0.76" into the lower level where it pooled.

Moreover, in order to exit the lower level of the house and reach the outside, one must step up. "If a person must step up when exiting the lower level to the outside, the lower level is below ground level and, thus, is a basement." Linder, 166 F.3d at 550. It is irrelevant that the step is only 0.76". Claims under the NFIP are directly charged to the U.S. Treasury, and as such the terms of the Policy (as with any SFIP) must be strictly construed and enforced. DeCosta, 730 F.3d at 83; McGair, 693 F.3d at 100 (quoting Jacobson v. Metro. Prop. & Cas. Ins. Co., 672 F.3d 171, 175 (2d Cir. 2012)). The policy draws a line at any step up, not at some arbitrary height. See King v. Casa Grande Condo. Ass'n, Inc., 416 F. App'x 363, 368 (5th Cir. 2011) ("Courts that have applied the SFIP's basement provision have held that the clear language of the provision establishes that property at any depth below ground level on all sides is a basement as defined by the SFIP."); Linder, 166 F.3d at 550 ("This is true even if one must step up only an inch when going outside."); Nelson v. Becton, 929 F.2d 1287, 1289 (8th Cir. 1991) ("The extent to which [properties are] subgrade, whether 6, 8, or 40 inches, is immaterial under the policy. The only question is whether they [are] subgrade or at ground level.").

Still, Matusevich asks us to ignore the fact that one steps up and out directly onto the concrete apron, and to instead compare the elevation of the lower level to the inaccessible soil

underneath. Such an approach would belie common sense. See VFC Partners 26, LLC v. Cadlerocks Centennial Drive, LLC, 735 F.3d 25, 31 (1st Cir. 2013) ("'Common sense is as much a part of contract interpretation as is the dictionary or the arsenal of cannons [sic].'" (alteration in original) (quoting Bukuras v. Mueller Grp., LLC, 592 F.3d 255, 262 (1st Cir. 2010))); Atlas Pallet, Inc., 725 F.2d at 134 (noting that insurance policies are nothing but contracts). It is the current elevation adjacent to the structure that is the relevant measuring point, not some arbitrary baseline which has no effect on current flood risks. Indeed, of the handful of cases nationwide addressing the basement exclusion, not one makes the distinction Matusevich argues for. See, e.g., King, 416 F. App'x at 368 (holding that a unit flooded after Hurricane Katrina was a basement for purposes of the SFIP because the unit's "elevation is 2.6 feet, while the lowest adjacent grade is 4.4 feet. Thus . . . [the] floor is at least 1.8 feet lower than the lowest elevation adjacent to the building, and therefore, below ground level on all sides."); Linder, 166 F.3d at 550-51 (finding the basement exclusion applied and that "ground level" was the elevation of the built-up alley adjacent to the building and not the soil at the time of construction);[3] Uddoh v. Selective Ins.

---

[3] Matusevich attempts to distinguish Linder by arguing that the question in Linder was "when" to measure -- either at the time of the flood or at the time of construction -- whereas the question here is "what" to measure -- either the soil or the architectural figure built on top. This argument is unpersuasive. Though the

-10-

Co., Civ. No. 2:10-cv-01804(WJM), 2012 WL 2979052, at *4 (D.N.J. July 20, 2012) (finding that the lower level of plaintiff's building was below ground level because "the lower level of his building was 8 inches below the actual street level at the time of the floods" (emphasis added) (internal quotation marks omitted)); TAF, L.L.C. v. Hartford Fire Ins. Co., 549 F. Supp. 2d 1282, 1287-88 (D. Colo. 2008) (finding the building subgrade because "in order to exit the lower floor, a person would walk out the door onto the landing, then traverse eight to ten steps across an excavated landing, and then walk up the eight-step stairway to access the natural grade or street level" (emphasis added)); Unger v. Liberty Mut. Ins. Co., 849 F. Supp. 839, 841, 846 (E.D.N.Y. 1994) (finding the lower level of plaintiff's home to not be a basement because one had to step down from the lower level to the driveway adjacent to the door).

Here, the concrete apron is directly adjacent to the lower level of Matusevich's home, and thus it is the relevant "ground level" elevation for determining whether the lower level is a "basement." Because the floor of the fourth side of the lower level is 0.76" lower than the concrete apron, all four sides of

---

Linder court framed the issue in terms of timing, this was just another way of asking the same question: whether to measure from the soil or from the crushed limestone artificially added on top of it.

Matusevich's lower level are below ground, and it therefore constitutes a "basement" under the SFIP.

Besides qualifying as a "basement" under a plain and commonsense understanding of the basement exclusion, policy rationales behind the NFIP also support a finding that Matusevich's lower level is a "basement" under the Policy. As noted above, one purpose of the NFIP is to change building practices to deter future flood risk. See 42 U.S.C. §§ 4001(e), 4002(b)(3); 44 C.F.R. § 60.1. When Matusevich's home was first built, it was 3.49" higher than the adjacent ground level. After the in-ground pool and concrete apron were built in 1977, however, the floor of Matusevich's lower level was 0.76" below the adjacent ground level. Thus, Matusevich's lower level is at a greater risk for flood damage now, after the installation of the pool and concrete apron, than it was when it was initially built. The fact that Matusevich's yard (including the concrete apron) slopes down towards the lower level of his home only increases this risk; indeed, there is a drain just outside the entrance to the lower level for excess water flow. Interpreting the basement exclusion to not encompass Matusevich's lower level could encourage similar building practices in future constructions, which is exactly what the NFIP was designed to deter.

Finally, in a last ditch effort to save his claim, Matusevich invokes the doctrine of reasonable expectations and

argues that his reasonable expectation as to the meaning of "ground level" should control to the extent of his Policy's coverage, or at the very least create an issue of fact to defeat summary judgment. In support of this argument, Matusevich points to three supposed facts: (1) that the common interpretation of the terms "ground level" and "grade" means "lawn, soil or undisturbed ground" and not "patios, walkways, driveways or concrete aprons"; (2) that the physical characteristics of Matusevich's lower level indicate that it is not a basement; and (3) that a Middlesex Mutual representative told him the lower level of his home was not a basement. None create a reasonable expectation that his lower level was not a basement.[4]

Regarding his first point, we have already rejected Matusevich's "common interpretation" of ground level and grade, as have numerous other courts when faced with similar facts, all of which made no distinction between lawn, soil, or other undisturbed

---

[4]  The First Circuit has yet to rule on whether the reasonable expectations doctrine is applicable in NFIP litigation. Because we find that none of Matusevich's arguments create a reasonable expectation even if the doctrine were applicable, we decline to decide the issue. We note, however, that at least two other circuits have refused to adopt the doctrine in NFIP litigation. See C.E.R. 1998, Inc. v. Aetna Cas. & Sur. Co., 386 F.3d 263, 270 (3d Cir. 2004) ("In the realm of private insurance, common law doctrines (such as 'reasonable expectations,' 'notice/prejudice,' and 'substantial compliance') govern the evaluation of claims. By contrast, a WYO insurer must strictly follow the claims processing standards set out by the federal Government."); Becton, 929 F.2d at 1291 (explaining that applying the doctrine of reasonable expectations would "frustrate [the] specific objective[]" of creating a unified nationwide flood insurance program).

ground and patios, walkways, or driveways.  See Linder, 166 F.3d at 550-51 (finding "ground level" to be the elevation of the built-up limestone alley); Uddoh, 2012 WL 2979052, at *4 (referring to the "actual street level" as ground level); Unger, 849 F. Supp. at 846 (equating the driveway adjacent to the lower level door with the ground level).

We also reject Matusevich's second argument that the physical characteristics of the lower level indicate that it is not a "basement."  The only requirement for being a "basement" under the SFIP is that "[a]ny area of the building, including any sunken room or sunken portion of a room, [have] its floor below ground level (subgrade) on all sides."  44 C.F.R pt. 61, App. A(1).  All other features of the room are irrelevant.  Moreover, Matusevich himself had notice that the lower level was considered a "basement."  His SFIP Application explicitly stated under the "Building Type" heading that the property was "(Including basement enclosure) Two Floors."  (Emphasis added).  Similarly, each of the three Flood Policy Declarations that Matusevich received (one in 2008, one in 2009, and one in 2010) included a "Building Description" describing the property as a "Single Family, Two Floors" with either a "Basement or Enclosure" (in 2008) or "Finished Basement/Enclosure" (in 2009 and 2010). (Emphasis added). Matusevich never objected to these characterizations.

Matusevich's last argument is that a representative of Middlesex Mutual told him and his wife that the lower level was not a "basement." Even accepting this statement to be true (as we must in the summary judgment context), it was not reasonable for Matusevich to rely on it. First, because this is federal insurance, regulated by federal law and paid out of the federal coffers, "the person seeking those funds is obligated to familiarize himself with the legal requirements for receipt of such funds." McGair, 693 F.3d at 100 (quoting Jacobson, 672 F.3d at 175) (internal quotation marks omitted). This includes understanding that a "basement" is defined under the Policy as any room with all four sides of its floor below ground level. Second, the regulations administering the NFIP provide that "no provision of the [policy] shall be altered, varied, or waived other than by the express written consent of the Federal Insurance Administrator." 44 C.F.R § 61.13(d); see also DeCosta, 730 F.3d at 87 (quoting Jacobson, 672 F.3d at 175). Thus, unlike a private insurance contract where an agent can alter or waive a term of the agreement, even if Matusevich did interpret this statement as an alteration or waiver of his Policy, the alteration or waiver was unenforceable. We have "previously enforced the written waiver requirement, noting that the SFIP 'explicitly preclude[s] oral waiver or waiver by conduct,'" DeCosta, 730 F.3d at 87 (alteration

-15-

in original) (quoting <u>Phelps</u> v. <u>FEMA</u>, 785 F.2d 13, 19 (1st Cir. 1986)), and we see no reason to divert from that practice here.

### III.  <u>Conclusion</u>

We agree with both Middlesex Mutual and the district court that the lower level of Matusevich's home qualifies as a "basement" under the Policy, and thus Middlesex Mutual appropriately denied his claim of loss for damages sustained during the October 4, 2011, flood.  Accordingly, the district court properly granted Middlesex Mutual's motion for summary judgment and denied Matusevich's motion.

**<u>AFFIRMED</u>.**