Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 16-1007

ADA SOLUTIONS, INC.,

Plaintiff,

v.

CHUCK MEADORS; CHUCK MEADORS, INC.,

Defendants/Third-Party Plaintiffs, Appellants,

CMI, INC.,

Third-Party Plaintiff,

v.

CONTINENTAL STRUCTURAL PLASTICS, INC.,

Third-Party Defendant, Appellee.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]
[Hon. Marianne B. Bowler, U.S. Magistrate Judge]

———————————

Before

Lynch, Lipez, and Thompson,
Circuit Judges.

———————————

Timothy K. Cutler, with whom Cutler & Wilensky LLP was on brief, for appellants.
Thomas H. Walters, with whom Howard & Howard Attorneys PLLC

was on brief, for appellee.

---

November 9, 2016

---

THOMPSON, **Circuit Judge**.  This case arises from what the district court characterized as "the worst-papered set of arrangements [it had] ever seen."  Chuck Meadors — along with his company, Chuck Meadors, Inc. (collectively, Meadors) — appeals from the entry of summary judgment in favor of Continental Structural Plastics, Inc. (CSP) and from the denial of his motion for summary judgment.  We reverse in part and affirm in part.

Because we write primarily for the parties and the district court judge — all of whom are familiar with the facts — we offer only a brief summary of the relevant background before cutting to the chase.  In August 2005, Meadors entered into a written agreement with ADA Solutions, Inc. (ADA), under which Meadors acted as ADA's agent in negotiations with its suppliers.  This agreement specified the compensation Meadors received from ADA for his services.  Shortly after executing this contract, Meadors entered into a written agreement with CSP, an ADA supplier, in which CSP agreed to pay Meadors a 5% commission on all sales by CSP to ADA.  ADA says it was unaware Meadors had made this deal until later. At first, everything went smoothly.

That all changed in June 2006, when CSP requested a meeting with ADA.  At this meeting, CSP indicated that its price would be lower if it did not have to pay Meadors the 5% commission.  Upon learning this news, ADA decided that Meadors should no longer accept the commission from CSP while acting as

ADA's agent.  From that point until ADA terminated Meadors in 2012, CSP did not pay Meadors his commission under their contract.

Meadors filed suit against CSP, alleging breach of contract (among other claims).[1]  The parties filed cross-motions for summary judgment, and the district court entered summary judgment in CSP's favor on the ground that Meadors had waived his contractual right to the commission from CSP.  Meadors timely appealed.

Before addressing the district court's waiver analysis, we first pause to explain why we need not concern ourselves with third-party-beneficiary principles.  Although CSP had not asserted its status as a third-party beneficiary below and neither party discussed it in the summary judgment papers, the district court concluded in its decision that CSP was an intended third-party beneficiary of an agreement between ADA and Meadors, which stated that Meadors would no longer accept a commission from CSP.[2]  The

---

[1] The procedural history of this case is more complex than our summary lets on.  We need not dwell on the details, and we refer the interested reader to the district court's decision, ADA Sols., Inc. v. Meadors, 98 F. Supp. 3d 240, 251-52 (D. Mass. 2015), for a full recap.

[2] Meadors characterizes CSP's third-party-beneficiary status as an affirmative defense.  By contrast, CSP asserts that the district court merely applied "a 'third party beneficiary' legal analysis."  (Emphasis omitted.)  But cf. First Nat'l State Bank of N.J. v. Commw. Fed. Sav. & Loan Ass'n of Norristown, 610 F.2d 164, 170 (3d Cir. 1979) (concluding that a bank could not argue that it was a third-party beneficiary on appeal because the bank "did not set forth this affirmative defense in its pleadings as required by

- 4 -

district court then stated that "CSP may enforce that agreement as a third-party beneficiary, and may pursue its [defenses] of waiver and novation," and it ultimately concluded that Meadors had waived his right to the CSP commission.[3]

The district court assumed that it could only address the issue of waiver after first determining that CSP was a third-party beneficiary of an agreement between Meadors and ADA. The primary focus of the parties' briefing on appeal is the propriety of the district court's sua sponte determination that CSP was in fact a third-party beneficiary of such an agreement. But the third-party-beneficiary analysis is unnecessary under Ohio law.[4] Meadors's right to the commission was based on the written contract between CSP and Meadors. If Meadors waived that contractual right expressly or by inconsistent conduct, CSP would be entitled to enforce that waiver, regardless of whether it was a third-party beneficiary of any agreement between Meadors and ADA. See Chubb v. Ohio Bur. of Workers' Comp., 690 N.E.2d 1267, 1269 (Ohio 1998) ("A waiver may be enforced by the person who had a duty to perform and who changed his or her position as a result of the waiver.");

---

Fed. R. Civ. P. 8(c)"). We need not enter this fray because our disposition of this appeal focuses solely on CSP's waiver defense.

[3] Because of its conclusion on the issue of waiver, the district court did not address CSP's novation defense.

[4] The district court found — and the parties agree — that Ohio law applies to this dispute.

CosmetiCredit, L.L.C. v. World Fin. Network Nat'l Bank, 24 N.E.3d 762, 772 (Ohio Ct. App. 2014) ("When a party to a contract offers, by word or action, a waiver of certain duties under the contract, other parties who change their position as a result of the waiver may enforce the waiver."). Therefore, we proceed to analyze the district court's conclusion that CSP is entitled to summary judgment on the ground that Meadors waived his contractual right to the CSP commission.[5]

In conducting our de novo review of the district court's summary judgment ruling, see Matusevich v. Middlesex Mut. Assur. Co., 782 F.3d 56, 59 (1st Cir. 2015), we conclude that genuine disputes of material fact preclude summary judgment on the issue of waiver. "A waiver is a voluntary relinquishment of a known right." Chubb, 690 N.E.2d at 1269; see also CosmetiCredit, 24 N.E.3d at 772. Waiver of a contractual right can be accomplished expressly or through a party's inconsistent conduct. CosmetiCredit, 24 N.E.3d at 772. In either case, "[t]he party asserting the existence of a waiver must prove the waiving party's clear, unequivocal, and decisive act to waive." Id.

Typically, the question of whether a waiver has occurred is for the factfinder to determine. See id. at 772-73 ("Whether

---

[5] In doing so, we assume that CSP adequately developed in its appellate brief the argument that it is entitled to summary judgment on the basis of waiver alone.

a party's inconsistent conduct amounts to a waiver involves a factual determination to be resolved by the trier of fact."); Palek Corp. v. A.P. O'Horo Co., No. 05 MA 141, 2007 WL 752159, at *4 (Ohio Ct. App. 2007) (unpublished decision) ("Whether or not there has been waiver of all or certain terms of a prior written agreement is a question of fact for the trier of fact." (quoting Vocke v. Third Nat'l Bank & Trust Co., 267 N.E.2d 606, 617 (Ohio Mun. Ct. 1971))); cf. Pottschmidt v. Klosterman, 865 N.E.2d 111, 117 (Ohio Ct. App. 2006) ("[I]t is for the trier of fact to determine whether . . . a waiver [of a no-oral-modification provision] occurred."). This case fits snugly within this general rule.

In its discussion of the factual background of this case, the district court stated that, either during or shortly after the June 2006 meeting between ADA and CSP, John Flaherty, ADA's president, issued Meadors an ultimatum: he could either receive payment under his agreement with ADA or continue to receive his commission from CSP; Meadors could not receive both. According to the district court, "[f]aced with this choice, Meadors relinquished [his] claim to the five percent commission on CSP's sales, opting instead to receive a payment as the purchasing agent of ADA." The district court concluded that "[t]his knowing and voluntary choice [was] sufficient to effect a waiver of the right to continue to receive commission payments from CSP." We cannot

- 7 -

go along with this reasoning because its factual premise was disputed.

It was not an undisputed fact that Meadors was presented with an ultimatum and chose to forgo his contractual right to a commission from CSP. At his deposition, Meadors testified that, at some point after the June 2006 meeting between ADA and CSP, he was told by Scott Ober, vice president and co-owner of ADA, that he could no longer accept the commission from CSP. According to Meadors, he protested to Ober, "You can't do that" because "I have a legal and binding contract" with CSP. Ober was unmoved, telling Meadors: "I did it. It's over." Similarly, while acknowledging that he was aware that he was no longer receiving a commission, Meadors also testified that he never volunteered, agreed, or consented to the cessation of the CSP commission. Viewing the facts in the light most favorable to Meadors — as we are required to do when analyzing the grant of summary judgment in favor of CSP, see Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008) — a jury could conclude that Meadors did not expressly waive his contractual right to the CSP commission.

We reach the same conclusion with respect to a waiver arising from inconsistent conduct. Although it is undisputed that Meadors continued to work for ADA without receiving his 5% commission from CSP for over five years, he represents in his affidavit that he "repeatedly voiced [his]

- 8 -

objections to the unilateral termination of [his right to the CSP commission] to [David] Murtha[, the plant manager of one of CSP's facilities,] as well as other managers at CSP."[6]   Along similar lines, Meadors testified at his deposition that, although he did not formally demand his commission from CSP, he raised the issue of nonpayment of the commission with Murtha on more than one occasion.   Meadors also broached the issue with John Berwald, another employee of CSP.   The determination of whether a party has waived a contractual right by inconsistent conduct is generally left to the factfinder, CosmetiCredit, 24 N.E.3d at 772-73, and, on these facts, a jury could reasonably conclude that CSP has not carried its burden to show that Meadors's conduct represented the requisite "clear, unequivocal, and decisive act to waive," id. at 772.[7]

---

[6] CSP argued below that Meadors's affidavit was incompetent summary judgment evidence under the sham-affidavit doctrine.  See generally Escribano-Reyes v. Prof'l HEPA Certificate Corp., 817 F.3d 380, 384-87 (1st Cir. 2016).   The district court did not address this argument in its decision (or anywhere else, as far as we can tell), and CSP does not press it before this court. Therefore, the argument is not properly before us.   See United States v. Hogan, 722 F.3d 55, 61-62 (1st Cir. 2013).

[7] In staking out a contrary position, CSP relies upon the following exchange from Meadors's deposition:

Q.   Well, from July of 2006 forward, you continued to perform a contract with ADA that did not include the five percent that was part of the earlier arrangement, correct?

A.   Correct.

- 9 -

For these reasons, the district court erred in granting summary judgment in CSP's favor on the ground that Meadors waived his contractual right to a commission from CSP.[8]  Meadors argues that this conclusion entitles him to the entry of judgment in his favor.  We disagree.

The evidence in this record is not one sided.[9]  In their respective depositions, Flaherty and Ober both testified that ADA

---

Q.   And you did so knowingly and voluntarily?  I mean, you knew that you weren't getting the five percent during all those years, 20 -- end of 2006, 2007, '08, '09, '10, '11, you knew that, correct?

A.   Correct.

According to CSP, this passage establishes that Meadors made a "knowing and voluntary choice" to waive his right to receive the commission from CSP.  We think that is not necessarily so, and a jury could find otherwise.

Although Meadors was asked whether he continued to perform "knowingly and voluntarily," the examiner posed an additional question before Meadors could respond.  That question simply asked whether Meadors knew he was not getting the commission while he continued to perform.  An affirmative answer to that question does not establish beyond genuine dispute that Meadors voluntarily relinquished — expressly or by inconsistent conduct — his right to the commission, especially in light of the evidence that his continued performance was punctuated by repeated objections to CSP.

[8] Although its motion for summary judgment offered several defenses, CSP has pressed only the waiver defense before this court.  Any arguments relating to the other defenses, therefore, are not properly before us.  See Hogan, 722 F.3d at 61-62.

[9] Where, as here, parties have cross-moved for summary judgment, "we evaluate each motion independently and determine 'whether either of the parties deserves judgment as a matter of law on facts that are not disputed.'"  Matusevich, 782 F.3d at 59 (quoting Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004)).

- 10 -

gave Meadors the ultimatum discussed by the district court and that Meadors agreed to continue to work for ADA and to forgo collection of the CSP commission. Additionally, there is evidence that might cast doubt on Meadors's assertions that he raised the issue of nonpayment of his commission with Murtha and Berwald; in an interrogatory response, Meadors admitted that "no one on behalf of [Meadors] ever contacted anyone at CSP during the years 2007, 2008, 2009, 2010, or 2011 relative to the CSP payment agreement." Similarly, Flaherty and Ober testified that Meadors never complained to them about CSP's nonpayment of the commission, and Ober further testified that, to his knowledge, Meadors lodged no such complaint with anyone at CSP. Moreover, even if Meadors did voice his objections to Murtha and Berwald, that circumstance would not, in itself, necessarily preclude a factfinder from concluding that, based on his continued performance for over five years, Meadors waived his right to the commission by his inconsistent conduct.

Because of the existence of genuine issues of material fact as to whether Meadors waived the commission expressly or by inconsistent conduct, Meadors was not entitled to summary judgment in his favor. The district court properly denied his summary judgment motion.[10]

---

[10] Of course, the district court did not deny Meadors's motion for summary judgment because a genuine issue of material fact

- 11 -

In sum, the fact-intensive nature of the waiver determination under Ohio law cuts both ways in this case; on this conflicting evidentiary record, the factfinder must resolve the question of whether Meadors waived his contractual right to receive a commission from CSP.[11]  Accordingly, neither party was entitled to summary judgment.  Each side shall bear its own costs on this appeal.

**Reversed in part and affirmed in part.**

---

existed on the question of waiver; instead, the judge reached the opposite conclusion and entered summary judgment for CSP on the basis of waiver.  Nevertheless, we are free to affirm the district court's summary judgment ruling on any grounds supported by the record, see Cordero-Suárez v. Rodríguez, 689 F.3d 77, 81 n.4 (1st Cir. 2012), and we do so here.

[11] CSP's alternative affirmative defense of novation is entirely dependent upon the same factual ambiguities entangled in the waiver analysis and likewise can only be resolved by a factfinder.